## B. J. Norris v. The State.

### No. 2117.  Decided March 13, 1901.

**1. Murder—Charge as to Manslaughter.**

On a trial for murder where it appeared that defendant and the brother of deceased had had a previous serious difficulty, and both had gone to the house to get their guns, and were returning with their guns to the scene of the difficulty, deceased accompanying his brother, and having a rock in his hand, when the difficulty was again renewed and the brother of deceased made demonstrations as though he was about to shoot defendant, whereupon defendant fired at him and deceased struck defendant with his rock and grabbed defendant's gun, and a scuffle ensued over the gun, defendant finally jerking the gun ·from him, whereupon deceased grabbed for a stick lying upon the ground, and, as he arose with it, defendant fired the fatal shot which caused the death of deceased. Held, the evidence was amply sufficient to raise the issue of manslaughter, and the court erred in refusing to give defendant's requested instructions submitting that issue to the jury.

**2. Same—Self-Defense—Charge.**

On a trial for murder, where it appeared the brother of deceased and defendant were engaged in a difficulty, at which deceased was present, the fact that deceased was present and advised his brother to engage in the difficulty, would not authorize or justify defendant in killing him (deceased), and it was not error for the court to refuse defendant's special requested instruction to the effect that defendant would have such right.

**3. Same—Apperances of Danger.**

On a trial for murder, where it appeared that defendant and the brother of deceased engaged in a difficulty, at which deceased was present, and, seeing defendant shoot his brother, attacked defendant in such manner as to cause defendant to believe, from all the circumstances surrounding him, that he (defendant) was in danger of death or serious bodily injury from deceased, then defendant would have the right to act upon such appearances of danger and kill deceased; and the court erred in refusing defendant's special requested instruction to that effect.

**4. Same—Intent of Deceased.**

On a trial for murder, where it appeared that the brother of deceased and defendant were engaged in a difficulty, and defendant shot at deceased's brother, whereupon deceased grabbed defendant's gun, and a scuffle ensued over the gun, and the defendant shook the deceased loose and shot him, it was error for the court, in· its charge, to hinge the defendant's right of self-defense upon what may have been the intent of deceased in trying to disarm him, which may have been an innocent and justifiable one, but entirely unknown to defendant. Deceased's intent could not control defendant's intent where the same was unknown to defendant.

**5. Same—Threats by a Participant in the Difficulty.**

On a trial for murder, where the difficulty originated between defendant and deceased's brother, and where defendant had introduced evidence of threats against him by the brother of deceased, Held, if deceased was acting with his brother in the execution of said threats, then deceased was bound by the threats of his brother and defendant could use said threats in his perfect self-defense for the murder of deceased, or they could be used by him in connection with the other circumstances to reduce the killing to manslaughter.  (See opinion for a charge of court upon this subject held to be erroneous.)

**6. Same—Charge Limiting Evidence.**

On a trial for murder, where it appeared that during the difficulty, before defendant shot deceased, he had shot deceased's brother, such shooting being part of the res gestae of the transaction, it was error for the court in the charge to limit and restrict its consideration by the jury.

APPEAL from the District Court of Wilbarger. Tried below before Hon. G. A. BROWN.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The appellant was charged by indictment with the murder of Ed Brewer, on the 8th day of July, 1900 by shooting him with a gun.

The salient features of the evidence are stated in the opinion, and the opinion also sets out in full the requested instructions of defendant, which were refused, and the portions of the court's charge, which were complained of, which are made subjects of discussion on the appeal. It is therefore unnecessary to make any further statement of the case.

*Huff & Hall,* for appellant, filed an able and elaborate brief.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

In order to properly understand the various questions discussed, it becomes necessary to make a short statement of the salient features of the evidence: Appellant was the landlord of John Brewer, and Ed (a brother of John Brewer) lived with John Brewer. Appellant lived in the same house with the Brewers, and used adjoining lots. The difficulty out of which the killing occurred arose over the placing of John Brewer's cattle in what was known as the "little lot" by defendant the night previous to the shooting. On the morning of the difficulty, defendant went out in his field and got an arm load of cut corn in the stalk to feed his horses, in the big lot. When he got inside the big lot he saw Ed Brewer (deceased) and his brother John in the big lot, near the gate of the little lot, and all of the cattle of the Brewers in the big lot, where he was going to feed his horses. When appellant first saw the Brewers, they were walking close together, with their backs to him. When he got within 10 or 15 feet back of them he said, "John, I wish you would put the cows into the lot until I can feed my horses." John Brewer said, "By God! you build me a lot." Defendant said, "I did not contract to do that." Brewer said, "You are a God-damn liar." Defendant turned loose the corn, pushed up his sleeves, and started towards Brewer. John Brewer stepped back to the calf pen by the little lot, and pulled off a slat. Deceased went to where there were some bushes, and picked up a rock weighing about two or three pounds. When deceased got the rock, and John the plank, defendant started to the gate. They cursed defendant, whereupon defendant called his son Bruce to bring his gun. The boy did not obey. Appellant then started to the house, where he and John Brewer both lived, but in different rooms. Both of the Brewers followed defendant.

Defendant went to his room, John Brewer saying, "Ed, get your six-shooter," and, before defendant reached his door, John Brewer ran into his (Brewer's) room. Defendant obtained his gun and returned to the front door and stuck his head out. John Brewer was standing in his door, with his gun pointed towards defendant's door. Defendant stepped out into the yard. John Brewer was cursing him—calling him a God-damn liar. Deceased was standing out within 10 or 12 feet in front of John's door. Defendant walked between them, going to the lot, with both of them following him—John with his gun in his hand and deceased with a rock. As appellant passed out of the yard gate, two or three steps beyond it, John ran in ahead of him, and defendant stepped to the west of the path a step or two, and deceased started to go in behind him, between defendant and the fence. Defendant motioned to him not to get behind him, and told him to stay in front. Then something was said about the contract. John Brewer said: "I will call Lottie (his wife), and, prove it by her." Then he said to deceased: "Get around him. Get around him. God damn him! we will fix him." He motioned his gun two or three times, like he was going to strike defendant, then raised it like he was going to shoot defendant, and defendant shot as quick as he could. As soon as the gun fired, deceased ran in, striking at defendant with the rock. Defendant threw up his arm, knocked the lick off, and the rock fell out of deceased's hand. Deceased then grabbed the gun, and defendant and deceased began to scuffle, and directly they came close to an ax. Deceased was looking at the ax as if he was going to get it. Defendant told his son Bruce to get the ax. Deceased turned the gun loose with one hand, reaching for the ax, and Bruce put his foot on it. Defendant then slung deceased loose, and deceased grabbed for a stick, and, as he came up with it, defendant shot. Deceased staggered for a step or two and fell. The above is, in substance, the testimony of defendant. John Brewer contradicts defendant in many and very material points, but states that he followed appellant from the lot to the house, got his gun, and then followed defendant to the yard gate, together with his brother; both following behind defendant to the yard gate. When they got there all stopped and entered into a discussion of the contract. John Brewer told defendant he could prove the contract as he understood it by his wife. Defendant stated: "If his (Brewer's) wife would swear that, she would lie." John Brewer turned to go to the house, and told defendant he was going to have him arrested. After he had gone a step or two, he heard a noise, turned his head, and defendant fired, knocking him down on his knees and hands. He fell with his back to defendant and his brother and his face to the house. "When I turned around, my brother was on the west side of the path; and, when defendant shot me, my brother grabbed the gun and began to scuffle with defendant over it. They scuffled awhile. Defendant called for Bruce to bring the ax. When Bruce got the ax and ran up to them, my brother turned the gun loose

and started away. When he got about three or four steps away, defendant shot him. I saw my brother when he was shot, and he just reeled and fell, and said, 'Oh Lordy me!' or something like that. I saw defendant after the shot was fired. He walked off a few steps, and called for shot and powder, and reloaded his gun. Defendant then walked around to where my brother lay, and said not to be uneasy. 'You are mine now, and I am too game to shoot a man when he is down.' " This latter statement, as well as many others, was contradicted by defendant. Deceased in his dying declaration in many respects corroborates his brother, John Brewer.

Complaint is made in bill of exception number 4 to the refusal by the court of the following requested charges: (1) When an unlawful killing takes place under the immediate influence of sudden passion, and no cause exists which will, under the law, justify or excuse its commission, then, in order to determine whether such homicide is murder in the second degree or manslaughter, the true test is, was there adequate cause to produce such passion? If such adequate cause existed, the homicide, if not justifiable, would be manslaughter. (2) And you are further instructed that any condition or circumstance which is capable of creating and does create sudden passion, such as anger, rage, sudden resentment, or terror, rendering the mind incapable of reflection, whether accompanied by bodily pain or not, is in law, adequate cause. (3) And in this case, if you should find from the evidence that the defendant shot and killed Ed Brewer, and that at the time he did so the actions and words of Ed Brewer, taken in connection with the words and actions of John Brewer, the age and relative strength of the parties, the weapons used by each, if any, and the demonstrations, if any, made by either at the time, was of such a nature as to produce adequate cause, as above explained, and did produce such adequate cause, sufficient to render defendant's mind incapable of cool reflection; and if, under the immediate influence of anger, rage, sudden resentment, or terror, the defendant shot and killed Ed Brewer; and if you are satisfied from the evidence, beyond a reasonable doubt, that the defendant did not kill said Ed Brewer in self-defense—then you may find him guilty of manslaughter." We think the evidence on the part of appellant raised the issue of manslaughter, and the above quoted charge should have been given to the jury. As indicated above, appellant and the main prosecuting witness testify that, just immediately prior to the difficulty in which deceased was killed, appellant and John Brewer (brother of the deceased) were in a heated colloquy over the terms of a rental contract made by appellant with John Brewer; and, just prior to the time this colloquy occurred, appellant and John Brewer had had another difficulty at the lot, in reference to the turning out of some cattle. Each had returned to the house and secured a gun. Both, together with deceased, were on their way back to the scene of the first difficulty, a few yards from the house. Certainly all these facts and

circumstances were reasonably calculated to produce in the defendant's mind a degree of anger, rage, sudden resentment, or terror such as would likely render his mind incapable of cool reflection. At any rate, the evidence is amply sufficient to raise that issue, and the court should have so charged. Gilcrease v. State, 33 Texas Crim. Rep., 619; Baltrip v. State, 30 Texas Crim. App., 545; Hawthorne v. State, 28 Texas Crim. App., 212; Cochran v. State, 28 Texas Crim. App., 422.

Appellant also claims that the court erred in refusing to give a special charge requested, as contained in bill number 3, as follows: "If the defendant killed Ed Brewer, he would be justified in doing so if he acted upon the reasonable appearances of danger of death or serious bodily injury to himself. It matters not whether the danger was real, whether in fact it existed, or whether it was merely colorable. If, from defendant's standpoint, taking into consideration all of the circumstances of the case, it would reasonably appear to him that he was in danger of death or serious bodily injury from the deceased or from his brother, John Brewer, he had the right to kill the deceased, although no such danger existed. If to the defendant it reasonably appeared that the danger in fact existed from the deceased or his brother, he had the right to defend against it to the same extent and under the same rules which obtain in the case of real danger." We do not think the court erred in failing to give the charge as worded, since the same does not present a correct proposition of law. It appears from said charge that appellant insists that if, from the defendant's standpoint, taking into consideration all the circumstances of the case, it would reasonably appear to him that he was in danger of death or of serious bodily injury from deceased or his brother, John Brewer, he had a right to kill deceased, although no such danger existed. If to defendant it reasonably appeared that the danger in fact existed from deceased or his brother, he had the right to defend against it to the same extent and under the same rule which would obtain in case of real danger. Defendant has a right to defend himself against real or appareent danger, as viewed from his standpoint, against either Ed or John Brewer, if acting together; and in doing so, if he thinks it is necessary, as viewed from his standpoint, to kill either Ed or John Brewer, in order to protect his own life or his person from serious bodily injury, then, in that event, he would have the right to slay either Ed or John Brewer. But the Brewers may have been acting together, yet, if appellant did not believe it was necessary to slay Ed Brewer in order to protect himself from death or serious bodily injury, the fact that Ed Brewer advised his brother John to engage in the difficulty, and was present at the time of the difficulty, and was not making any demonstration to assist in the difficulty, and it so appeared to defendant, then the mere fact that Ed Brewer did advise his brother to engage in the difficulty with defendant, and was present at the time of the difficulty, would not au-

thorize defendant to kill Ed Brewer; but the killing would be unlawful, and would be murder in either the first or second degree, or manslaughter, according as the evidence might show. In other words, appellant would have no right to kill Ed Brewer because he was a brother of John, and advised John to engage in the difficulty with appellant, and was present after so advising. The above-quoted charge requested by appellant seems to imply he would have such a right, and hence the court did not err in refusing to give the same.

Appellant also requested the court to give the following charge, which was refused, to wit: "If you shall find that the defendant shot John Brewer in order to prevent said John Brewer from taking his life or doing him some serious bodily injury, and that at the time he did so his life was in danger, or he was in danger of serious bodily injury from the said John Brewer, or from the standpoint of defendant it reasonably appeared to defendant that he was in such danger; and you further find that, up to the time of said shooting, deceased, Ed Brewer, was not participating in the difficulty, and it did not so appear to defendant that he was so participating—yet if you find that after said shooting the deceased made an attack on defendant which indicated to the defendant's mind, from all the circumstances then surrounding him, that such was his purpose, and that his life was in danger, or serious bodily injury to himself was threatened, or if, from all the circumstances then surrounding the defendant, viewed from his (defendant's) standpoint, such an attack was about to be made on him by deceased, and, that when such attack or apparent attack was made on the defendant, he shot and killed the deceased, Ed Brewer, then the court charges you that in such an event he would have the right to do so in his own defense, and in that event you will acquit defendant." Certainly, if deceased was present and saw defendant shoot his brother, and thereupon made an attack upon defendant which indicated to him, from all the circumstances surrounding defendant at the time, that he was in danger of death or serious bodily injury, he would have the right to act on appearances and kill deceased. The court should have instructed the jury as requested by appellant.

By bill of exceptions number 6, exception was reserved to the following portion of the charge of the court, to wit: "In this case, if the jury find that at the time of and just prior to the shooting of Ed Brewer by defendant, while in carrying distance of his gun, he shot at deceased's brother, John Brewer, with intent to kill the said John Brewer; and you further find that, had defendant killed the said John Brewer by such shot, he (defendant) would have been guilty of murder of the said John Brewer; and if it reasonably appeared to deceased, Ed Brewer, that said John Brewer was in danger of being then and there further injured by defendant—then, I instruct you, the deceased had a right to disarm defendant, to prevent such apparent injury to the

said John Brewer; and, if necessary to prevent such further injury to his brother, the deceased had the right to assault the defendant, and to use all the force upon the defendant reasonably necessary to prevent such injury; and if, under such circumstances, and while deceased was so endeavoring to prevent defendant from inflicting further injury upon his brother, John Brewer, the defendant shot him (Ed Brewer), from the effect of which he died, the offense, if committed with express malice, will be murder in the first degree, and, if not committed with express malice, it is murder in the second degree, although at the time the defendant fired the shot that killed the deceased he (the deceased) was about to assault the defendant, to prevent further injury to his said brother, John, if he was about to do so. And if you find from the evidence that defendant shot at John Brewer under the circumstances above mentioned, and that had he thereby killed said John Brewer, the offense woud have been murder, under the court's charge; and you further find that, to prevent the defendant from further injuring or shooting the said John Brewer, deceased, Ed Brewer, attempted to get possession of defendant's gun, whereon a struggle ensued between defendant and said Ed Brewer, and that therein defendant caused his son Bruce Norris to make an attack on deceased with a deadly weapon, or instrument calculated to inflict serious bodily injury; and you find that, to prevent serious bodily injury to himself and under said circumstances, the said Ed Brewer then and there attempted to strike defendant with a stick, or if the said Ed Brewer when so attacked by defendant's son abandoned the struggle for defendant's gun and fled therefrom, and the defendant then and there shot the said Ed Brewer with intent to kill him and from the effect of which shot he died—then the defendant can not justify the killing on the ground of self-defense, and the killing will be unlawful, although the deceased would have killed or seriously injured defendant with said stick had defendant not shot him, and though at the time defendant fired the shot that killed deceased the latter was making the attack upon defendant under the circumstances and in the manner above stated, if he was doing so, the offense would be murder in the second degree; and if the shot that killed deceased was fired by defendant after deceased had abandoned the attempt to disarm defendant, and defendant there knew deceased had so abandoned said attempt to disarm him, and shot deceased with express malice, the offense will be murder in the first degree." This charge is not the law. Under the Penal Code of this State, the guilt or innocence of defendant depends upon the intent with which defendant acts, and is not predicated upon the intent of deceased or some one else. If appellant shot at John Brewer and failed to kill him, as the evidence in this case shows, his guilt or innocence must depend upon the animus with which he acted towards John Brewer. If he shot at Ed Brewer subsequent to having shot at his brother, and from the wounds so inflicted Ed Brewer

died, then the guilt or innocence of defendant must be judged from the criminal intent he had at the time he shot Ed Brewer; and his guilt or innocence can not depend in one instance upon his guilt, or innocence in the other. If he shot Ed Brewer with malice aforethought, either express or implied, he would be guilty of murder in either the first or second degree. If he shot him in a sudden transport of passion, aroused by an adequate cause, he would be guilty of manslaughter. If he shot him in self defense, as that term is defined by law, he would be guilty of no offense. The learned judge has hinged appellant's defense upon the intent of Ed Brewer. Ed Brewer's intent can not control defendant's intent, for Ed Brewer's intent was unknown to appellant. At least, the proof does not show such fact. If appellant knew that Ed Brewer was simply attempting to disarm him, with no intent of injuring him in the least, and knowing such fact he killed Ed Brewer, he would be guilty of murder in the first or second degree, or manslaughter, as the evidence might warrant. It follows, therefore, that the learned judge should not have given the above-quoted charge.

In bill of exceptions number 8 appellant complains of the following portion of the charge of the court, to wit: "In this case the defendant has introduced testimony tending to prove threats made by John Brewer against defendant prior to the shooting mentioned in the indictment; and in this connection you are instructed that, where threats are made against the life of a defendant who shoots and kills, or attempted to kill, the person making such threats, the threats shall not afford a justification for the offense, unless it be shown that at the time of the shooting the person making such threats, or some person acting with him, by some act then done, manifested an intention to then and there execute the threats so made. And in this case, if you believe from the evidence that prior to the shooting at John Brewer by defendant the said John Brewer had threatened to take the life of defendant or to do him some serious bodily harm, and that defendant knew of such threats, if any, and that at the time defendant shot at John Brewer he or Ed Brewer (if you believe Ed Brewer was present and acting with John Brewer, or was by words, acts, or gestures encouraging him), by some acts then done, or words spoken, coupled with acts, if any, showed an immediate intention to carry such threats into execution; and if, from all the facts and circumstances known to defendant, he had reason to believe and did believe he was then about to suffer death or serious bodily injury at the hands of John or Ed Brewer, and that acting under such fear of danger, if any, as the same reasonably appeared to him from his standpoint, the defendant shot at John Brewer to prevent such apparent injury to himself—then the requirements of the law would be satisfied, and the defendant guilty of no offense, so far as the shooting at John Brewer is concerned." This charge is erroneous. Appellant is not being tried in this case for shooting at John Brewer; and if John

Brewer had made threats to take the life of appellant, and deceased was acting with John Brewer in the execution of those threats, as contended by appellant, then deceased would be bound by the threats of John Brewer, and appellant may use said threats in his defense. And if, coupled with the threats of John Brewer, and the active co-operation on the part of deceased in the execution of the threats on the part of John Brewer, appellant believed, or had reason to believe, judging from all the circumstances surrounding him at the time, that his life was in danger at the hands of deceased as well as John Brewer, then he would have the right to shoot and kill deceased. Or if deceased was present, aiding, advising, and assisting in carrying on the quarrel and difficulty, and his presence and demeanor was such as reasonably produced in the defendant's mind a reasonable fear or expectation of death · or serious bodily injury, either at the hands of deceased or John Brewer, and if defendant's mind, by the circumstances surrounding him, and by the acts and conduct of the deceased while co-operating with his brother, was aroused, by an adequate cause, either to anger, rage, sudden resentment, or terror, such as rendered his mind incapable of cool reflection, and while so aroused he shot deceased, he would not be guilty of any higher grade of offense than manslaughter. Casner v. State, ante, p. 118.

In bill of exceptions number 10 appellant complains of the charge of the court in instructing the jury that they could not consider the shooting at John Brewer by defendant for any purpose, except to establish the res gestae or to show defendant's intent. The shooting of John Brewer by defendant was immediately preceding the shooting at deceased, as indicated by the statement of facts, and was a part and parcel of the res gestae. We know of no rule authorizing the court to limit its consideration by the jury. Thornley v. State, 36 Texas Crim. Rep., 118; Wilson v. State (Texas Crim. App.), 36 S. W. Rep., 587.

In the view we take of this record, we do not deem it necessary to consider other assignments of error. But, for the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*