PEOPLE v GREGORY JOHNSON

Docket No. 53956. Submitted October 12, 1981, at Detroit.—Decided January 19, 1982.

Gregory R. Johnson was convicted of manslaughter, Detroit Recorder's Court, Joseph A. Gillis, J. He appeals. *Held:*

1. The trial court erred in concluding as a matter of law that the defendant was not entitled to assert a claim of self-defense because he killed a person other than one who had threatened him by raising a chair. However, the error does not require reversal. The record reveals that the conclusion was expressed in dicta and that the court's conviction as the trier of fact was based on the evidence.

2. The record reveals that the defendant's conviction is supported by the evidence presented.

Affirmed.

1. HOMICIDE — SELF-DEFENSE — CONCERTED ACTION.

A person who is attacked by two or more persons or by one person, and others are either acting with the attacker or are present and aid and encourage the attacker, may act in self-defense against all of the persons and may be justified in killing one or all of the persons where he reasonably entertains a belief that he is in danger of loss of his life or of incurring serious bodily injury at the hands of such persons.

2. HOMICIDE — SELF-DEFENSE.

A claim of self-defense in a homicide case will fail where it is determined that the accused was the aggressor, the decedent was unarmed, and the accused was the first to employ deadly force.

3. CRIMINAL LAW — APPEAL.

A reviewing court, in determining whether sufficient evidence was presented to support a conviction, must view the evidence

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide § 139.
[2] 40 Am Jur 2d, Homicide § 145.
[3] 5 Am Jur 2d, Appeal and Error § 883.

in a light most favorable to the prosecution, and where the record reveals that a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt the conviction will be upheld.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Thomas A. Law,* for defendant on appeal.

Before: MacKenzie, P.J., and Bronson and Beasley, JJ.

Bronson, J. Defendant was charged in the Detroit Recorder's Court with second-degree murder. MCL 750.317; MSA 28.549. Following a bench trial, defendant was convicted of manslaughter. MCL 750.321; MSA 28.553. He was sentenced to serve a term of imprisonment of from 6 to 15 years, and now appeals as of right.

On April 6, 1980, at about 5:25 a.m., the decedent, Ronald Black, entered an Onassis Coney Island restaurant in Detroit. He was accompanied by two companions, James Stevenson and Vera Means. Defendant was seated at the counter with his sister, Donna Johnson, and a friend, Robert Farley. Approaching the carry-out counter, Ronald Black and James Stevenson attempted to place an order. Black accidentally bumped into defendant's arm. As a result, some of defendant's coffee spilled on the counter.

Vera Means and James Stevenson testified that Black apologized but that defendant became angry, called decedent names, jumped up from the counter, pulled out a knife, and slashed Black. After Black was gashed, he reached out and

grabbed defendant. The two men wrestled to the ground. At this time, Black was stabbed a total of five times in the chest and back.

Defendant and his sister both testified that after Black had accidentally spilled the coffee Black began threatening defendant and calling him names. They stated that defendant got off his chair and began to back away as Black advanced toward him. Then, according to defendant, Stevenson picked up a chair, whereupon defendant pulled out his knife. Defendant's sister said Stevenson picked up the chair before the victim was stabbed, and she went over and dragged him to the ground before he could use it to strike the defendant. Defendant said he was backed into a corner of the restaurant away from the door. He then slashed the victim. Nonetheless, defendant said Black continued to threaten him. Consequently, defendant stabbed Black. Defendant and the victim then wrestled for the knife, and the victim was stabbed again.

Stevenson, however, stated that he grabbed the chair after defendant pulled out the knife, intending to stop defendant with it. Vera Means said Stevenson picked up the chair after the fight began while she was "hollering".

This testimony was largely corroborated by Zef Juncaj, an employee of the Onassis Coney Island. He stated that after the victim accidentally spilled defendant's coffee an argument ensued and the defendant stood up and pulled out a knife. The victim did not have a weapon, nor did he threaten the defendant; he merely walked toward him. It appeared to the witness that the victim was going to try to take the knife away from the defendant. He saw the defendant stab the victim repeatedly, then run out the door.

Ndue Duhani, another employee of the Onassis Coney Island, testified that the chair was not picked up before Black was cut on the lip. He said that defendant's sister also had a knife and threatened Stevenson with it.

The court found that the more credible testimony supported the conclusion that, after refusing to accept decedent's apology for spilling the coffee, defendant slashed the victim. The court further found that the testimony indicating that Stevenson raised the chair only after the initial stabbing to be the more believable. The court also found, "In any event, Mr. Gregory Rene Johnson cannot claim self-defense defending himself against a chair held by James Stevenson by stabbing the deceased Mr. Black".

Defendant first contends that the trial court erroneously found as a matter of law that he was not entitled to claim self-defense in the stabbing of the deceased since it was Stevenson who had raised the metal chair. The question of the applicability of a self-defense claim on facts similar to the present case has never been addressed in Michigan. Indeed, relatively few cases from any American jurisdiction deal with the problem of self-defense when concert of action is an arguable issue.

We adopt the rule stated in 40 CJS, Homicide, § 136, p 1021, as follows:

"Where accused is attacked by two or more persons, or is attacked by one person and others are acting with the assailant or are present and aiding and encouraging him, he has a right to act in self-defense against all and, in a proper case, to kill one or all. However, accused is not justified in killing one of such persons where he does not entertain a belief that he is in

danger of serious bodily injury or loss of life at the hands of such person." (Footnotes omitted.)

This principle does not give a defendant *carte blanche* to kill anybody who is marginally associated with the alleged assailant. In *Norris v State,* 42 Tex Cr R 559; 61 SW 493 (1901), the defendant was convicted of murder for shooting one of two brothers with whom he was arguing. On appeal, the conviction was affirmed. The court rejected the defendant's argument that he was entitled to an instruction that, if he reasonably believed he was in danger of death or serious bodily harm at the hands of one of the brothers, he had the right to kill either.

The court in *Norris* stated:

"If to defendant it reasonably appeared that the danger in fact existed from deceased or his brother, he had the right to defend against it to the same extent and under the same rule which would obtain in case of real danger. Defendant has a right to defend himself against real or apparent danger, as viewed from his standpoint, against either Ed or John Brewer, if acting together; and in doing so, if he thinks it is necessary, as viewed from his standpoint, to kill either Ed or John Brewer, in order to protect his own life or his person from serious bodily injury, then, in that event, he would have the right to slay either Ed or John Brewer. But the Brewers may have been acting together, yet, if appellant did not believe it was necessary to slay Ed Brewer in order to protect himself from death or serious bodily injury, the fact that Ed Brewer advised his brother John to engage in the difficulty, and was present at the time of the difficulty, and was not making any demonstration to assist in the difficulty, and it so appeared to defendant, then the mere fact that Ed Brewer did advise his brother to engage in the difficulty with defendant, and was present at the time of the difficulty, would not authorize defendant to kill Ed Brewer; but the killing would be unlawful, and would

be murder in either the first or second degree, or manslaughter, according as the evidence might show. In other words, appellant would have no right to kill Ed Brewer because he was a brother of John, and advised John to engage in the difficulty with appellant, and was present after so advising. The above-quoted charge requested by appellant seems to imply he would have such a right, and hence the court did not err in refusing to give the same." *Id.*, 563-564.

See, also, *Griffin v Commonwealth,* 204 Ky 783; 265 SW 327 (1924), *Gordon v State,* 193 Miss 374; 9 So 2d 877 (1942), *State v Powell,* 237 Iowa 1227; 24 NW2d 769 (1946).

In accordance with the foregoing, we agree with defendant's assertion that the mere fact that he killed decedent, and not Stevenson, does not necessarily preclude a successful self-defense claim. Nonetheless, we find that the trial court's erroneous legal conclusion does not warrant reversal in this case. The court's statement concerning defendant's lack of right to assert self-defense in respect to the killing of Black was dictum. The court's decision actually rested on its factual findings that defendant started the fight, was the first to employ deadly force, and that the decedent was not armed. As the aggressor and first to use deadly force, defendant's self-defense claim fails. *People v Harris,* 95 Mich 87, 90; 54 NW 648 (1893), *People v Van Horn (On Remand),* 64 Mich App 112, 115; 235 NW2d 80 (1975). The court further found that, even after the chair had been raised by Stevenson, defendant had an available escape route. Given these explicit findings of fact, it is clear that the trial court did not believe that this was a case of two attackers, or one assailant and another aiding and abetting in the assault. As such, the court's erroneous statement of law in dicta does not warrant reversal since it is patently clear that, under

the rule we adopt, defendant's self-defense claim fails in light of the trial judge's finding.

Defendant also asserts that the evidence was insufficient to sustain the court's verdict of guilty of manslaughter in any case. The standard for assessing claims of insufficient evidence was recently summarized in *People v Delongchamps,* 103 Mich App 151, 159; 302 NW2d 626 (1981):

> "When determining whether there is sufficient evidence to support their convictions, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979)."

Basically, defendant asserts that the trial court's finding that he did not act in self-defense is not supported by the record. We disagree. Based on the factual scenario prefacing this opinion, there was ample testimony which, if believed, would support a finding that the killing was not committed in self-defense. The Michigan Supreme Court has on many occasions said that due to the trial court's unique vantage point in the proceedings, it is for it to weigh the testimony and assess the credibility of the witnesses. *People v Thomas,* 387 Mich 368, 372; 197 NW2d 51 (1972), and cases cited therein.

Affirmed.