## PEOPLE v SORSCHER

Docket No. 84889. Submitted December 10, 1985, at Lansing. Decided April 21, 1986. Leave to appeal denied, 425 Mich 881.

The Oakland Circuit Court convicted defendant, Irving M. Sorscher, following a bench trial, of criminal sexual conduct in the fourth degree, George H. LaPlata, J. Defendant appealed. *Held:*

1. The trial court did not err by admitting into evidence the testimony of complainant regarding actions taken by defendant after defendant had placed complainant in a hypnotic trance. The fact that the testimony concerned events which transpired while complainant was under hypnosis goes to the weight and credibility to be given to the testimony, not to its admissibility.

2. Similarly, the trial court did not err by allowing another witness to testify regarding a similar incident involving sexual contact by defendant after defendant had placed the witness under hypnosis. The trial court did not abuse its discretion in admitting this testimony under the rule of evidence on the admissibility of evidence of an accused's other crimes, wrongs, or acts, MRE 404(b).

3. Defendant was not denied his constitutional right to cross-examination and confrontation when the trial court admitted into evidence the testimony of complainant and the other witness who testified regarding a similar act by defendant. The mere fact that these witnesses had been hypnotized did not automatically preclude effective cross-examination. While there was a danger that hypnosis affected these witnesses' confidence in their recall, that danger was minimized when the trial court allowed defendant to establish, through the testimony of ex-

REFERENCES

Am Jur 2d, Appeal and Error § 831.

Am Jur 2d, Criminal Law §§ 956-966.

Am Jur 2d, Evidence §§ 298 *et seq.*, 1095.

Am Jur 2d, Witnesses §§ 463 *et seq.*

Modern status of rules as to admissibility of evidence of prior acts or injuries at same place. 21 ALR4th 472.

Admissibility of hypnotic evidence at criminal trial. 92 ALR3d 442.

perts, that confabulation, the tendency of a person under hypnosis to confuse fact with fantasy, is an inherent possibility.

4. As a matter of public policy, a defendant should not be able to place a person under hypnosis, sexually assault that person and then claim that the person is incompetent to testify because the testimony is tainted by hypnosis.

5. The Court of Appeals concluded that the evidence produced at trial was sufficient to support defendant's conviction, after viewing the evidence in a light most favorable to the prosecution and determining that a rational trier of fact could find the essential elements of criminal sexual conduct in the fourth degree were proven beyond a reasonable doubt.

6. Defendant did not assert confabulation as an affirmative defense, since defendant denied the charge against him. Therefore, the people were not required to prove beyond a reasonable doubt that complainant did not confabulate the alleged incident.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — HYPNOSIS.

Testimony by a witness is a criminal case regarding what the defendant allegedly did to the witness after the defendant placed the witness in a hypnotic trance may be admitted by the trial court; the fact that such testimony concerns an event which transpired while the witness was under hypnosis goes to the weight of the testimony, not to its admissibility.

2. CRIMINAL LAW — EVIDENCE — HYPNOSIS — CONSTITUTIONAL LAW — RIGHT TO CROSS-EXAMINATION.

A criminal defendant's constitutional right to cross-examine and confront a witness for the prosecution who testifies regarding actions allegedly taken by the defendant after the witness was placed by the defendant in a hypnotic trance is not violated where the trial court allows the defendant to introduce evidence regarding the inherent possibility of confabulation.

3. CRIMINAL LAW — APPEAL — SUFFICIENCY OF EVIDENCE.

The standard for review of challenges to the sufficiency of evidence is that the appellate court must view the evidence in the light most favorable to the prosecutor and then determine whether there was sufficient evidence of each element of the offense so that a rational trier of fact could conclude that the defendant was guilty beyond a reasonable doubt.

4. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of similar crimes, wrongs, or acts committed by a

defendant is generally not admissible to prove the defendant's bad character and, through it, guilt of the charged offense; such evidence is excluded because of the perceived danger that the defendant's character as a bad person will avert the trier of fact from an objective appraisal of the defendant's claimed conduct; however, similar-acts evidence may be admissible in limited circumstances to prove other specifically identified conditions and facts and, through them, guilt of the charged offense.

5. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a similar act may be admitted where: (1) there is substantial evidence that the defendant in fact committed the alleged similar act; (2) there is some special quality or circumstance of the similar act tending to prove motive, opportunity, intent, preparation, scheme, plan, or a system in doing an act, knowledge, identity, or absence of mistake or accident; (3) one or more of the factors is material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the similar-act evidence is not substantially outweighed by the danger of unfair prejudice; proof of a defendant's similar acts under requisite (1) need only be sufficient to convince the jury of the probability of defendant's actions as opposed to proof beyond a reasonable doubt.

6. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — RULES OF EVIDENCE — APPEAL.

The decision of whether or not to allow the admission of evidence of prior similar acts is within the trial judge's discretion and will not be disturbed on appeal absent an abuse of that discretion (MRE 404[b]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Robert F. Davisson,* Assistant Prosecuting Attorney, for the people.

*Robert S. Harrison & Associates* (by *Robert S. Harrison),* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and HOOD, JJ.

HOOD, J. Following a bench trial, defendant was

convicted of criminal sexual conduct in the fourth degree, MCL 750.520e; MSA 28.788(5). He appeals as of right.

The complainant testified that on Sunday, August 17, 1980, he and his friend, Emmanuel Hatz, rode their bicycles to defendant's office in West Bloomfield. At the time, complainant was fifteen years of age. A friend of Emmanuel's, Mark Hoffman, was cleaning defendant's office. Upon arriving there, Emmanuel and complainant began to help Mark clean the office. Emmanuel then suggested that defendant, who was also present, hypnotize complainant. Emmanuel previously had told complainant that defendant hypnotized him and that it was fun. The complainant agreed to try it.

According to complainant, defendant led him to his personal study, closed the door and began to put him under hypnosis. No one else was present in the sutdy. Defendant rubbed complainant's neck, head and shoulders, telling him that he was the only person that could make him "feel this good." Then defendant took him into one of the dental examination rooms. There he demonstrated how hypnosis could be used instead of gas or Novocaine to numb a person, by inserting a needle into complainant's hand and a dental instrument into his gum. Complainant did not feel any pain. Defendant called Mark to the office to show him how he had put the dental instrument into complainant's gum and complainant heard Mark call Emmanuel over to look.

Then defendant and complainant went into another examination room so that the one they were occupying could be cleaned. Defendant resumed rubbing complainant's neck and shoulders and asked complainant where else he would like to be rubbed. Pursuant to complainant's response, defendant rubbed complainant's head, arms and legs.

While he was rubbing complainant's legs, defendant placed his hand on complainant's crotch and placed complainant's hand on his crotch telling complainant to hold him. Complainant testified that he was powerless to resist.

Emmanuel then knocked on the door and said that it was time to go. Before taking complainant out of hypnosis, defendant told complainant that the rubbing, except for the head, shoulders and neck was not important and that he should forget it. Shortly thereafter, complainant and Emmanuel left defendant's office.

Complainant told Emmanuel, Mark and his parents about the incident. Complainant's mother testified that, upon arriving at home on the night of the incident, complainant was quiet, subdued and went straight to his room. When he told her the following day about the incident, she called the police. She observed two puncture marks in his hand. Officer Joseph Chapin, who took the report, also observed these puncture marks.

Emmanuel Hatz and Mark Hoffman essentially corroborated complainant's testimony except for the incident giving rise to the instant charges because they were not in the room when it occurred.

Two expert witnesses testified on behalf of defendant. Dr. Herbert Spiegel, a psychiatrist who has specialized in hypnosis for the past twenty years, testified in support of defendant's defense of confabulation. As it relates to hypnosis, confabulation refers to the manufacturing of factual data. According to Dr. Spiegel, a hypnotized person often has a difficult time separating factual material from fantasy. A hypnotized person may become so attached to a certain premise that the person will confabulate facts which never occurred to support the premise and present these "facts" with the conviction of an

honest man. This was referred to as the "honest liar" syndrome. Dr. Spiegel further testified that sexual fantasies and confabulations are most common in hypnotized adolescents and that it was not uncommon for people who are in a trance state, even in a clinical setting, to have erotic sensations. On cross-examination, Dr. Spiegel testified that many people can accurately recall what occurred during a hypnotic session.

Dr. Bernard Diamond, a clinical professor of psychiatry whose involvement in the field of hypnosis began in the early 1940's, testified that a person under hypnosis becomes more susceptible to suggestion and is likely to suspend his critical judgment. A person under hypnosis confuses actual memories of reality with fantasies and tends to fill in gaps in his memories with details from his fantasies. This is a process known as confabulation. Additionally, hypnosis tends to induce a false sense of confidence and belief in the confabulated matter. This makes it more difficult to cross-examine such a witness and the normal process of direct and cross-examination may be useless to expose false convictions that arise by hypnosis.

Dr. Diamond further testified that it is not unusual for individuals to experience a hypnotic trance as a sexual experience and to confuse it with sexual fantasies. He state that adolescents and young adults are more likely to have sexual fantasies during hypnosis. On cross-examination, Dr. Diamond acknowledged that it was possible for a person to accurately recall what occurred during a hypnotic session.

Defendant also testified on his own behalf. He explained that he uses hypnosis on about five percent of his patients, generally for relief of pain or anxiety. He basically corroborated complainant's testimony but denied ever rubbing or offering to rub the

complainant. He also denied that he touched complainant's crotch or had complainant touch his crotch.

The prosecutor then called Vincent Bedogne in rebuttal. Bedogne testified that in January, 1973, he and his wife had a dental appointment with defendant. Bedogne, who was twenty-three years old at the time, informed the defendant that he was grinding his teeth. Bedogne testified that defendant then suggested hypnosis as a way to cure the problem. He stated that at first he refused, but defendant insisted. He further stated that, while under hypnosis, defendant placed a pin in the back of his hand and he did not feel any pain. Bedogne stated that defendant then placed defendant's hands on his crotch and kissed him.

Defendant retook the stand and denied touching Bedogne's crotch or kissing him. He did admit, however, that he used hypnosis to treat Bedogne in January, 1973.

Defendant's first contention on appeal is that the testimony of complainant and Vincent Bedogne is inherently unreliable and should not have been admitted because the testimony concerned what had occurred while the witnesses were under hypnosis. Defendant concedes that this is a matter of first impression but argues that the decisions in *People v Gonzales,* 415 Mich 615; 329 NW2d 743 (1982), modified 417 Mich 968 (1983), and *Frye v United States,* 54 US App DC 46; 293 F 1013 (1923), support his position. We disagree.

In *People v Gonzales, supra,* our Supreme Court made the following observations on the use of hypnosis to refresh recollection:

The hypnotic state is a condition of altered consciousness marked by heightened suggestibility. A subject in a hypnotic state may not have accu-

rate recall. A hypnotized subject is highly suscepti-
ble to suggestion, even that which is subtle and
unintended. Such suggestion may be transmitted
either during the hypnotic session or before it by
such persons as, in this case, the policemen inves-
tigating the killing. The person under hypnosis
experiences a compelling desire to please either
the hypnotist or others who have asked the person
hypnotized to remember or who have urged that it
is important that he or she remember certain
events. The subject may produce the particular
responses he believes are expected of him. In this
state of hypersuggestibility and hypercompliance
the subject will unconsciously create answers to
the questions which the hypnotist asks if he can-
not recount the details being sought. This process
of filling the gaps of memory with fantasy is called
confabulation. Neither the person hypnotized nor
the expert observer can distinguish between confa-
bulation and accurate recall in any particular
instance. Finally, a witness who is uncertain of his
recollections before being hypnotized will become
convinced through the process that the story he
told under hypnosis is true and correct in every
respect. This effect not only persists, but the wit-
ness's conviction of the absolute truth of his hyp-
notically induced recollection grows stronger each
time he is asked to repeat the story. [*Gonzales,
supra,* pp 623-624.]

Pursuant to these observations, the Supreme
Court decided that the process of hypnosis is not a
scientific technique which has gained general ac-
ceptance in the field to which it belongs and,
therefore, its results are inherently unreliable.
Accordingly, the Court held that testimony of
witnesses which has been tainted by hypnosis is
inadmissible in criminal cases. 415 Mich 626-627.

We conclude that neither *Gonzales* nor *Frye* is
applicable to the instant case.

We perceive that the thrust of *Gonzales* is to

exclude testimony which has been obtained through hypnosis as a method for improving a witness's memory. This premise is ground in the rule of *Frye* which prohibits the admission of evidence obtained from a scientific technique or device which has not gained general acceptance in the field to which it belongs. In the case at bar, hypnosis was not used as a scientific technique to obtain evidence against defendant. Rather, it was used by defendant as an aid in the commission of a sexual assault.

Moreover, we hold that, as a matter of public policy, a defendant should not be able to put a person under hypnosis, sexually assault that person and then claim that the person is incompetent to testify because the testimony is tainted by hypnosis. As the trial court observed: "Common sense dictates that it would be derisive to the legal system to permit a criminal offender to cause a condition to a victim and then assert that he is thereby prejudiced by the very condition that he is responsible for."

Nor do we believe that by so holding we impinge, as defendant claims, upon his presumption of innocence. Defendant's claim is based upon the premise that the testimony of any witness concerning what occurred while the witness was under hypnosis is so unreliable that it must be excluded from evidence as a matter of law or defendant's presumption of innocence is weakened. However, even defendant's own experts testified that it was possible for a person to accurately recall what occurred during a hypnotic state. Therefore, we conclude, as did the trial court, that the fact the victim's testimony concerns what happened under hypnosis, when the hypnosis was induced by defendant, must go to the weight or credibility of the testimony, not its admissibility.

Defendant next contends that he was denied his constitutional right to cross-examination and confrontation because the testimony of complainant and Bedogne concerned events that occurred while under hypnosis. Again, we disagree.

"The mere fact that a prosecution witness has been hypnotized does not automatically preclude effective cross-examination." *People v Nixon,* 421 Mich 79, 91; 364 NW2d 593 (1984). While there is a danger that the hypnosis has affected the witness's confidence in his or her recall, so long as the defendant is allowed to establish the fact of hypnosis and to introduce expert evidence regarding the inherent possibility of confabulation, the danger is minimized. Further, the danger of allowing a defendant to escape prosecution by the simple expedient of hypnotizing his victim far outweighs the danger that a trier of fact cannot accurately assess the credibility of a victim who has been hypnotized.

In the case at bar, the trier of fact was well aware that the witness had been hypnotized and of the effects of hypnosis upon an individual's ability to remember events that occurred under hypnosis. Therefore, we conclude that defendant's right to cross-examination was not prejudiced.

Defendant next argues that his conviction cannot be sustained because the people failed to disprove defendant's defense of confabulation beyond a reasonable doubt. Defendant contends that confabulation is an affirmative defense which must be disproven beyond a reasonable doubt once a defendant produces enough evidence to place the defense into controversy. *People v Charles Thompson,* 117 Mich App 522, 528-529; 324 NW2d 22 (1982).

Again, we must disagree. Confabulation was not

presented as an affirmative defense in this case. "An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse of mitigate it . . . ." 21 Am Jur 2d, Criminal Law, § 183, p 338. The instant defendant never admitted that he committed the acts of which he is accused. Rather, his entire defense was that the complainant created the acts of which defendant is accused through the process of confabulation. This is not an affirmative defense but one that goes to the weight of the testimony. The prosecutor was not required, therefore, to prove beyond a reasonable doubt that complainant did not confabulate the acts, this being a question of credibility for the trier of fact to decide.

Defendant also argues that the evidence produced at trial was insufficient to sustain his conviction. Defendant's argument is without merit.

This Court, in reviewing the sufficiency of evidence in an appeal from a bench trial, views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221; 380 NW2d 11 (1985); *People v Marlin Smith,* 119 Mich App 91, 94; 326 NW2d 434 (1982); *People v Gregory Johnson,* 112 Mich App 483, 489; 316 NW2d 247 (1982).

In this case, defendant was convicted of fourth-degree criminal sexual conduct, contrary to MCL 750.520(e); MSA 28.788(5):

> Sec. 520e(1) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if either of the following circumstances exist:
> (a) Force or coercion is used to accomplish the sexual contact . . . .

(b) The actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless.

Sexual contact is defined as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." MCL 750.520a(k); MSA 28.788(1)(k). Thus, defendant's conviction may stand only if it has been established beyond a reasonable doubt that the defendant engaged in an act of sexual contact with the complainant by force or while the complainant was mentally or physically helpless.

The instant trial court in its findings of facts found the complainant and his friends more credible than defendant. This was based in part upon the court's observation that the entire episode took approximately an hour to transpire. Therefore, the trial court could not believe that defendant's sole intent was to allow the complainant to experience hypnosis.

The trial court acknowledged the tendency of adolescents in particular to confabulate and to have sexual fantasies. He further acknowledged that it is essential to have some external corroboration when confronted with hypnotically affected testimony. The trial court noted that the incident giving rise to the present charge was not a "tale of fantasy" but a simple statement that he was touched in the genital area by the defendant. The trial court further found that a similar incident involving defendant and the witness Bedogne was corroborative of the incident which happened to complainant. This corroboration, combined with

the fact that the remaining circumstances were generally not in dispute, convinced the trial court of defendant's guilt beyond a reasonable doubt.

These findings are sufficient to sustain defendant's conviction.

Defendant's final contention, that the "similar act" evidence furnished by witness Bedogne was improperly admitted, is also meritless.

Generally, evidence of simlar crimes, wrongs, or acts committed by a defendant is inadmissible because any probative value is "outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of defendant's guilt or innocence." *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973). The policy consideration underlying this rule is the desire to avoid the danger of a conviction based upon the defendant's history of prior misconduct or because he is a bad person, rather than upon the evidence of the defendant's specific conduct regarding the charged offense. *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982).

As an exception to this general rule, similar act evidence may be admissible in limited circumstances to prove certain specific conditions and facts and, through them, guilt of the charged offense. *People v Goree,* 132 Mich App 693, 704; 349 NW2d 220 (1984). MRE 404(b) states the rule and its exceptions:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other

crime, wrongs, or acts are contemporaneous with, or prior or subsequent to the crime charged.

In *Golochowicz, supra,* p 309, our Supreme Court held that before "similar act" evidence may be introduced, the following requirements must be satisfied:

> (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice.

The admission of "similar act" testimony is a matter within the trial judge's discretion and will not be disturbed on appeal absent an abuse of that discretion. *People v Alexander,* 142 Mich App 231, 233; 370 NW2d 8 (1985); *People v Brown,* 137 Mich App 396, 405; 358 NW2d 592 (1984).

Defendant contends that there was insubstantial evidence that defendant committed the similar act. Proof of a defendant's similar act must only be sufficient to convince the trier of fact of the probability of defendant's actions as opposed to proof beyond a reasonable doubt. The prosecution need not offer evidence corroborating the "similar-act" witness's testimony when that witness testifies from his own personal knowledge, since credibility of a witness is a question for the trier of fact.

*Alexander, supra,* p 234, citing *People v Duncan,*
402 Mich 1; 260 NW2d 58 (1977). In the present
case, Bedogne testified that he went to defendant's
office for dental treatment and was sexually as-
saulted by defendant while under hypnosis. Be-
dogne identified defendant at trial. Furthermore,
defendant's own testimony substantiated that he
treated Bedogne on the date and time Bedogne
alleged that defendant sexually assaulted him.
Therefore, there was substantial evidence that
defendant committed the similar act.

Defendant asserts that the special circumstance
requirement of *Golochowicz, supra,* was not met.
This requirement "refers to the relationship be-
tween the charged and uncharged offenses which
supplies the link between them and assures
thereby that evidence of the separate offense is
probative of some fact other than defendant's bad
character." *Golochowicz, supra,* p 310. This re-
quirement quantifies the necessary degree of simi-
larity between the prior act and the crime
charged. *Goree, supra,* p 706. The special circum-
stance providing the similarity between the prior
crime and the charged offense in the present case
was the use of hypnosis by defendant to commit
the sexual assault.

Defendant argues that none of the factors per-
mitted to be proved with evidence of similar acts
was material in this case. We find that the evi-
dence was probative of whether defendant in-
tended to touch the complainant's crotch for the
purpose of sexual gratification or arousal. More-
over, it was admissible to prove defendant's plan,
scheme or system in committing the sexual act, a
factor which had been put into dispute by defen-
dant's defense of confabulation. Compare *People v
Oliphant,* 399 Mich 472; 250 NW2d 443 (1976).

Lastly, defendant claims that the danger of un-

fair prejudice outweighed the probative value of the evidence. We do not agree. The evidence was highly probative of whether the complainant's testimony was the product of confabulation. Moreover, this was a bench trial where the trial court, as the trier of fact, was aware of the proper use for this testimony and applied it accordingly. Defendant has established no error.

Affirmed.