PD-0485-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/1/2015 9:29:15 AM
Accepted 5/1/2015 12:02:01 PM
ABEL ACOSTA
CLERK

No._____

In the
Court of Criminal Appeals

—————◆—————

No. 14-14-00245-CR
In the Court of Appeals for the Fourteenth District of Texas at Houston

—————◆—————

No. 1407238
In the 263rd District Court of Harris County, Texas

—————◆—————

**JEREMY DESHAWN DUGAR**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

—————◆—————

STATE'S PETITION FOR DISCRETIONARY REVIEW

—————◆—————

FILED IN
COURT OF CRIMINAL APPEALS

May 1, 2015

ABEL ACOSTA, CLERK

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**KATIE DAVIS**
Assistant District Attorney
Harris County, Texas
TBC No. 24070242

**TIM BALLENGEE**
**MATTHEW PENEGUY**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713-755-5826
FAX: 713-755-5809

*Counsel for Appellee*

ORAL ARGUMENT REQUESTED

## IDENTIFICATION OF THE PARTIES

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Katie Davis**—Assistant District Attorney on appeal

**Tim Ballengee; Matthew Peneguy** — Assistant District Attorneys at trial

*Appellant or Criminal Defendant:*

**Jeremy Deshawn Dugar**

*Counsel for Appellant:*

**Alexander Bunin** – Public Defender of Harris County

**Mark C. Kratovil** – Counsel on Appeal

**Sean Buckley; Tonya McLaughlin**—Counsel on at trial

*Trial Judge:*

**Honorable Jim Wallace**—Judge of 263rd District Court

# TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ....................................................................i

INDEX OF AUTHORITIES.............................................................................. iii

STATEMENT REGARDING ORAL ARGUMENT.................................................vi

STATEMENT OF THE CASE.......................................................................... vii

STATEMENT OF PROCEDURAL HISTORY ....................................................... vii

STATEMENT OF FACTS ...................................................................................1

GROUNDS FOR REVIEW ...............................................................................6

    A.  The appellant was not entitled to self-defense under a multiple assailants theory when the victim was merely present at the scene. ...............................6

    B.  The court of appeals erred in finding that the appellant was entitled to a self-defense instruction because there was no evidence that he reasonably apprehended an immediate danger. ...............................................................6

    C.  The trial court could determine as a matter of law that the victim was an innocent third person under Section 9.05 of the Texas Penal Code thus precluding an instruction on self-defense.....................................................6

    D.  The court of appeals erred in finding that the appellant was harmed by the failure to include a self-defense instruction because evidence sufficiently established beyond a reasonable doubt that there was no justification for protection against deadly force........................................................................6

ARGUMENT .................................................................................................6

GROUND FOR REVIEW ONE .........................................................................7

GROUND FOR REVIEW TWO ........................................................................11

GROUND FOR REVIEW THREE .....................................................................13

GROUND FOR REVIEW FOUR .......................................................................17

PRAYER FOR RELIEF...................................................................................18

CERTIFICATE OF SERVICE AND COMPLIANCE...............................................20

# INDEX OF AUTHORITIES

**CASES**

*Arias v. State*,
  04-04-00247-CR, 2005 WL 1334536 (Tex. App.—
  San Antonio June 8, 2005, pet. ref'd) ..................................................15

*Banks v. State*,
  955 S.W.2d 116 (Tex. App.—
  Fort Worth 1997, no pet.) ..................................................................14

*Beardsley v. State*,
  738 S.W.2d 681 (Tex. Crim. App. 1987)................................................9

*Black v. State*,
  65 Tex. Crim. 336,
  145 S.W. 944 (1912)..........................................................................7

*Brown v. State*, 10-07-00279-CR, 2010 WL 138331 (Tex. App.—
  Waco Jan. 13, 2010, pet. ref'd, untimely filed)............................ 14, 16

*Cunningham v. State*,
  982 S.W.2d 513 (Tex. App.—
  San Antonio 1998, pet. ref'd)..............................................................8

*Dickey v. State*,
  22 S.W.3d 490 (Tex. Crim. App. 1999)................................... 7, 8, 18

*Dugar v. State*,
  14-14-00245-CR, 2015 WL 1632690 (Tex. App.—
  Houston [14th Dist.] April 9, 2015, pet. filed)............................. passim

*Evans v. State*,
  202 S.W.3d 158 (Tex. Crim. App. 2006)..............................................9

*Hamel v. State*,
  916 S.W.2d 491 (Tex. Crim. App. 1996)............................................11

*Horn v. State*,
  647 S.W.2d 283 (Tex.Crim.App. 1983) ..............................................10

*People v. Johnson*,
316 N.W.2d 247 (Mich. 1982) ...............................................................10

*Scroggs v. State*,
396 S.W.3d 1, 13 (Tex. App.—
Amarillo 2010, pet. ref'd, untimely filed)............................................12

*Shaw v. State*,
243 S.W.3d 647 (Tex. Crim. App. 2007)...........................................11, 17

*Sparks v. State*,
177 S.W.3d 127 (Tex. App.—
Houston [1st Dist.] 2005, no pet.) ........................................................15

*State v. Sandoval*,
258 P.3d 1016 (N.M. 2011) ...................................................................10

*Thomas v. State*,
05-96-01469-CR, 1998 WL 549070 (Tex. App.—
Dallas Aug. 31, 1998, pet. ref'd)............................................................14

*Vidal v. State*,
418 S.W.3d 907 (Tex. App.—
Houston [14th Dist.] 2013, pet. ref'd)............................................ 14, 16

## STATUTES

TEX. PENAL CODE § 1.07(42) (West supp. 2014)......................................11

TEX. PENAL CODE § 6.04 (West 2011) .....................................................13

TEX. PENAL CODE § 7.02 (West 2011) .......................................................7

TEX. PENAL CODE § 9.05 (West 2011) .....................................................13

TEX. PENAL CODE § 9.31 (West 2011) .....................................................11

TEX. PENAL CODE. § 9.31(b) (West 2011)................................................ 14

TEX. PENAL CODE § 9.32 (West 2011) .....................................................11

TEX. PENAL CODE § 19.02 (West 2011) ...................................................16

## RULES

TEX. R. APP. P. 66.3 ..................................................................................................6

TEX. R. APP. P. 68.2 ................................................................................................ vi

TEX. R. APP. P. 68.4 (c)..............................................................................................v

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 68.4 (c), the State requests oral argument because this case deals with a self-defense claim involving unique facts, and specific questions regarding the facts may assist this Court in reaching a just decision. Furthermore, in order to reach its holding in this case, the court of appeals was required to distinguish its own precedent as well as precedent from other courts of appeals. Finally, the issue of who decides predicate questions for a self-defense instruction and the factors involved in that analysis could have an impact on a substantial number of cases throughout the State of Texas.

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

## STATEMENT OF THE CASE

The State charged the appellant with the felony murder of Tevin Williams (CR–7). The jury found the appellant guilty (CR–121; 6 RR 22). The trial court sentenced him in accordance with the jury's verdict to twelve years in the Texas Department of Criminal Justice, Institutional Division (CR–128-30; 7 RR 32-33). The appellant filed timely notice of appeal, and the trial court certified that he had the right to appeal (CR–132-34).

## STATEMENT OF PROCEDURAL HISTORY

The court of appeals issued a published opinion reversing the conviction, holding that the trial court was required to give a jury instruction on the law of self-defense. *Dugar v. State*, 14-14-00245-CR, 2015 WL 1632690 (Tex.App.—Houston [14th Dist.] April 9, 2015, pet. filed) (attached as Appendix A). This petition for discretionary review is timely if filed on or before May 11, 2015. TEX. R. APP. P. 68.2.

**STATEMENT OF FACTS**

On May 2, 2010, 17-year-old Tevin Williams arrived at a going away party for a friend heading to jail (3 RR 34-5, 84). Over a hundred people gathered in an abandoned K-Mart parking lot for the sendoff (3 RR 34-5, 85). About fifteen minutes after Williams arrived, the police shut down the party; everyone cleared in a hurry and moved to a nearby park (3 RR 34, 39).

Williams rode along with Frederick Gibson, Adrian King and William Watson to the park in Gibson's black Dodge Charger (3 RR 39, 87-88, 166-67). *See* (St.Ex. #8). As cars left the K-Mart parking lot, some jostling occurred near the exits, where people tried to maneuver their vehicles in front of others (3 RR 89). A caravan of vehicles followed Gibson onto Wallisville Road, including a black Cadillac driven by a friend, Timothy Stallworth, and a red Ford Focus (3 RR 86-89, 92, 169). The appellant, driving in a Jeep, and his brothers, driving in two separate Buicks,[1] also followed the caravan (3 RR 88).

On the way to the park, several of the cars following Gibson were involved in an accident[2] (3 RR 92, 168). Watson and Gibson did not see the accident

---

[1] Watson first testified that the two Cadillacs were with the appellant's convoy, but later clarified that they were Buicks (3 RR 51-3). *See* (St.Ex. #7).

[2] The accounts of who was involved in the actual collision vary from witness to witness. Watson stated he did not have personal knowledge of the accident, but knew the Hispanic couple in the green Explorer had been hit (3 RR 47-8). Gibson testified that he did not see who was involved in the wreck, but thought it may have been Stallworth and the appellant (3 RR 92). Gibson later

themselves, but King saw some cars "swinging" – going side-to-side with their cars (3 RR 47-8, 92-4, 167). King saw the appellant's car hit another car and Stallworth's vehicle, causing Stallworth to hit a green Ford Explorer (3 RR 168-9). The green Explorer was not part of the caravan or going-away party, and contained a Hispanic couple, Cesar Gonzalez and Jennifer Javier, and their nine-month-old child (3 RR 94, 195-7). *See* (St. Ex. #9).

After learning about the accident, Gibson pulled over into a Workforce Solutions parking lot along Wallisville Road and flagged others down (3 RR 70, 115). Stallworth and the green Explorer pulled over into the lot, but the appellant and the two Buicks left the scene (3 RR 49, 170). People in the parking lot were upset and confused about the accident (3 RR 97-8, 171). The appellant and his brothers returned to the parking lot about ten to fifteen minutes after they drove off (3 RR 53, 115, 173).

When the appellant's convoy arrived, they did not exit their vehicles; instead they stayed in their vehicles and "rolled" through the parking lot (3 RR 50, 75-6, 175). The others attempted to get information from the appellant regarding the accident, but the appellant would not provide any information (3 RR 174-5).

---

learned the Hispanic couple in the green Explorer had been hit (3 RR 94). King testified he saw the appellant hit multiple cars (3 RR 168). The appellant's brother testified that the red Ford hit the Explorer (5 RR 64). The appellant's cousin testified that the Cadillac ran a red light and hit another vehicle (5 RR 96). The appellant testified that the Cadillac and the red Ford sandwiched his vehicle, which caused his Jeep to hit the red Ford (5 RR 128).

Although there was some arguing according to Watson, King, and Gibson, no threats were made and no guns were drawn (3 RR 55-7, 103, 175, 201, 207; 5 RR 131). The State's witnesses all testified no one showed a weapon to the appellant or his convoy (3 RR 55-7, 103, 175, 201, 207). The appellant's brother and the appellant's cousin testified they saw multiple people with guns (5 RR 65-6, 99). The appellant testified he saw only one person with a gun, but it was never pointed at him or anyone else (5 RR 131).

No one, including the appellant, saw Williams with a weapon (3 RR 105, 181; 5 RR 158). No one, including the appellant, saw Williams threaten the appellant (3 RR 105, 181). No one, including the appellant, saw Williams and the appellant in any altercation (3 RR 105, 181).

The appellant stated he did not argue with anyone and was only in the parking lot for three to five minutes (5 RR 131). But because he was riding in a Jeep, the appellant felt vulnerable and threatened by the hostile group of people in the parking lot (5 RR 131). The appellant grabbed his gun out of fear, but did not show it to anyone (5 RR 132).

The appellant and his brothers left the parking lot (5 RR 134). When the appellant was out of the parking lot on Wallisville Road, he turned and pointed his gun loaded with hollow-point bullets towards the crowd of people (5 RR 134). Though no one pointed a firearm at him and he was in the process of leaving, the

3

appellant shot two times towards the crowd (5 RR 134, 157-8). He felt that the crowd pursued his vehicle and was going to cause him harm (5 RR 133-4). The appellant, with military training, knew it was unsafe and dangerous to human life to fire into a crowd of people (5 RR 141-2). The appellant was the first to shoot (5 RR 157-8). The appellant shot Williams (5 RR 57). The appellant kept driving and did not return (5 RR 157-8).

Dennis Wolfford, a homicide detective with the Harris County Sheriff's Office, arrived on the scene around 7:00 pm (4 RR 3). Wolfford, along with other deputies, interviewed the witnesses on the scene and tested each of their hands for gunshot residue (4 RR 8, 12). Williams' test results were negative (4 RR 88-90). Justin Harris, a passenger in Stallworth's Cadillac, admitted to firing several return shots at the appellant from Gibson's .380 handgun (3 RR 114; 4 RR 12). Officers recovered spent .380 caliber bullet cartridges from the parking lot that matched that gun (3 RR 128-9; 5 RR 55).

From his investigation, Wolfford identified the appellant as the suspected shooter and issued a warrant for his arrest (4 RR 21-4). After the appellant was arrested, he provided a statement to police (4 RR 26). *See* (St.Ex. #46). The appellant admitted to being the first shooter after Wolfford mentioned self-defense (4 RR 39; 5 RR 145-8). The appellant told officers that he thought the other group could have been trying to steal his brothers' Buicks (4 RR 41-2; 5 RR 150). The

4

appellant admitted he knew of Williams' death but did not report anything about his involvement (5 RR 83, 92, 111-12, 114). The appellant told officers he had given the 9-millimeter pistol to his brother after the shooting (4 RR 33-4). After further investigation, law enforcement found two shell casings from a 9-millimeter pistol in the road near the parking lot that matched the appellant's weapon (4 RR 18-19; 5 RR 56-8). And a 9-millimeter projectile was found with Williams' blood on it that matched the appellant's weapon as well (5 RR 45-7, 57).

Williams died from a gunshot wound to the chest, and his death was ruled a homicide (5 RR 24-5). The bullet entered through the top front part of his chest, traveled through his right lung in a downward direction, and exited through his mid-back (5 RR 17-18). The medical examiner that performed Williams' autopsy described this trajectory as unusual, and explained that Williams could have been bending over at the waist (5 RR 18-19). He also explained that he would not expect a through and through injury to be caused by a "falling" bullet, one shot directly into the air, because it would not have enough force to exit the body (5 RR 31).

## GROUNDS FOR REVIEW

A.   The appellant was not entitled to self-defense under a multiple assailants theory when the victim was merely present at the scene.

B.   The court of appeals erred in finding that the appellant was entitled to a self-defense instruction because there was no evidence that he reasonably apprehended an immediate danger.

C.   The trial court could determine as a matter of law that the victim was an innocent third person under Section 9.05 of the Texas Penal Code thus precluding an instruction on self-defense.

D.   The court of appeals erred in finding that the appellant was harmed by the failure to include a self-defense instruction because evidence sufficiently established beyond a reasonable doubt that there was no justification for protection against deadly force.

## ARGUMENT

This petition for discretionary review should be granted because the lower court decided an important issue of state law that should be settled by this Court, because the decision conflicts with other courts of appeals' decisions on the same issue, and because the analysis used by the court has so far departed from the accepted and usual course of judicial proceedings so as to call for an exercise of this Court's power of supervision. TEX. R. APP. P. 66.3. Specifically, the court of appeals held that the appellant was entitled to a jury instruction on self-defense under a theory of multiple assailants despite the fact there was no evidence

6

indicating that the victim was a part of the perceived hostility and no reasonable belief of an immediate danger. Furthermore, the court of appeals determined that whether a victim is an innocent bystander under Section 9.05 is a question for the factfinder, contrary to its previous precedent and other courts of appeals.

## GROUND FOR REVIEW ONE

*The appellant was not entitled to self-defense under a multiple assailants theory when the victim was merely present at the scene.*

The court of appeals appears to contend that the appellant was entitled to an instruction on self-defense from multiple assailants regardless of the complainant's actions. *See Dugar*, 2015 WL 1632690 at *11. But Williams' mere presence in the parking lot fails to establish that he acted as a party to the threat the appellant perceived. A claim of self-defense from multiple assailants requires some evidence that the appellant could have perceived that the victim was complicit with those who threatened his life. *See Dickey v. State*, 22 S.W.3d 490, 493 (Tex.Crim.App. 1999) (Keller, J., concurring) ("The rule concerning multiple assailants is essentially an application of the law of parties to the defendant's assailants."); *Black v. State*, 65 Tex. Crim. 336, 343-44, 145 S.W. 944, 947 (1912) (holding the appellant is entitled to act in self-defense against another that is part of a larger group of assailants when they "in any way are encouraging, aiding, or advising the real assaulting party."); TEX. PENAL CODE § 7.02 (West 2011). Without requiring some evidence of a victim's connection to the hostility, a defendant could

7

presumably kill anyone merely in the vicinity of a hostile group and claim self-defense.

Here, no evidence was presented that Williams encouraged, aided, directed, or acted with deadly force against the appellant; he did not have a weapon, there was no gunshot residue found on his hands and he did not threaten or speak to anyone, and there was no evidence that he was complicit with other's actions towards the appellant (3 RR 105, 158, 181). *Cf. Cunningham v. State*, 982 S.W.2d 513, 520 (Tex.App.—San Antonio 1998, pet. ref'd) (holding that appellant's presence at the time of the shooting and pointing towards the victims suggested he acted in concert with the shooters; even if he did not shoot a gun himself and only pointed, his action suggested he was encouraging those who were shooting); *see also Dickey*, 22 S.W.3d at 493 (providing a hypothetical that deadly force may be justified against a victim who only blocked the exit while other individuals brandished firearms and attacked the defendant). Therefore, the appellant was not justified in his actions against Williams because he could not be considered "a party" to any group attack on the appellant.

The lower court appears to conclude that merely being present with a group of angry people is enough to garner responsibility for the group's actions. *See Dugar*, 2015 WL 1632690 at *12. The court of appeals relies on Williams being a passenger in the Cadillac in order to support its contention that Williams partook in

deadly force against the appellant. *Id*. But the court misstated the record on this point.[3] Williams was not a passenger in the Cadillac that "aggressively chased" the appellant down; rather, the record indicated that Williams was a passenger in Gibson's Dodge Charger (3 RR 44, 87-88, 92, 166-67; 5 RR 126). The Charger was not involved in the accident and Gibson only pulled into the parking lot after he witnessed the accident behind him (3 RR 44, 87-88, 92, 166-67; 5 RR 126).

The only evidence that connected Williams with the alleged "angry mob" was that he was merely present in the parking lot. But mere presence has never been held sufficient to determine any level of criminal responsibility. *See*, e.g., *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App. 1987) (holding that for purposes of the law of parties mere presence of the defendant at the scene of the offense will not support a conviction; but, it is a circumstance which, combined with other facts, may show the defendant was a participant); *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006) (holding that mere presence at the location where drugs are found is insufficient, by itself, to establish possession of those drugs).

---

[3] The court of appeals may have relied on Watson's misstatement when he referred to the black Cadillac as Tevin's; however, Watson later clarified that the Cadillac belonged to Stallworth (3 RR 39, 44). And Watson, Gibson and King all testified that the complainant rode with them in Gibson's Charger (3 RR 44, 87-88, 92, 166-67). Even if the appellant was a passenger in the Cadillac, finding that he encouraged the road rage or was a party to the aggression against the appellant as a passenger would be speculation.

9

Moreover, courts that have addressed the issue have required more than vague testimony that the crowd as a whole was hostile or that they were "all coming after the defendant" to support a finding that the injured third party acted in concert with the angry mob. *Cf. State v. Sandoval*, 258 P.3d 1016, 1021 (N.M. 2011) (finding that the defendant's testimony that the victim looked as if he were searching for something in the car was evidence to support providing an instruction on self-defense from multiple attackers); *Horn v. State*, 647 S.W.2d 283, 285 (Tex.Crim.App. 1983) (finding the evidence showed the victim acted in concert with two other assailants when the defendant testified that the victim kicked him and there was undisputed testimony that he aided the other two assailants).

The principle of self-defense against multiple assailants does "not give a defendant carte blanche to kill anybody who is marginally associated with the alleged assailant." *People v. Johnson*, 316 N.W.2d 247, 249 (Mich. 1982). Following the lower court's logic, the appellant would have been justified in killing anyone in the parking lot, including Javier's nine-month-old child that was also merely present in the crowd. *See* (3 RR 196-200). Therefore, the court of appeals erred in holding otherwise.

## GROUND FOR REVIEW TWO

*The court of appeals erred in finding that the appellant was entitled to a self-defense instruction because there was no evidence that he reasonably apprehended an immediate danger.*

A defendant is not entitled to a self-defense instruction merely because he asks for it and claims that he felt fear at the time he used deadly force; rather, the fact that he reasonably believed his use of force was *immediately necessary* to protect himself from another's use or potential use of deadly force must be raised by the evidence. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex.Crim.App. 2007); TEX. PENAL CODE §§ 9.31, 9.32 (West 2011). This belief is measured by a mixed objective and subjective standard to determine whether a defendant was justified in using deadly force. *See Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996) (noting that the "term 'reasonably believes' in § 9.32 encompasses the traditional holding that a suspect is justified in defending against danger as he reasonably apprehends it."); TEX. PENAL CODE § 1.07(42) (West supp. 2014) (measuring reasonableness of the belief by the objective standard of an "ordinary and prudent man.").

An instruction on self-defense is not required when it is not raised by the evidence. *Id*. And when the undisputed facts demonstrate a complete absence of immediate necessity or harm, a trial court may deem it unreasonable as a matter of law. *Scroggs v. State*, 396 S.W.3d 1, 13 (Tex.App.—Amarillo 2010, pet. ref'd,

11

untimely filed); *Wilson v. State*, 777 S.W.2d 823, 825 (Tex.App.—Austin 1989), *aff'd*, 853 S.W.2d 547 (Tex.Crim.App. 1993).

In the present case, looking at the evidence from the appellant's viewpoint, the evidence failed to show a reasonable belief that he was in imminent danger. At the time he fired the gun, the undisputed facts show that the appellant was driving away in a vehicle from a crowd that was pursuing him on *foot* (5 RR 132-5, 157-8). He was driving on a separate road, outside of the parking lot where the crowd remained (5 RR 133). And as he drove away from the crowd, no one got in a vehicle and no evidence was presented that the group would have been able to catch the appellant in his vehicle as they pursued on foot. Although the appellant stated he felt vulnerable and threatened because the crowd was acting "vicious" and "ferocious" towards him, he did not testify that he feared for his life or that firing the gun was immediately necessary to protect himself from harm (5 RR 131-4). Moreover, in the three to five minutes he was in the parking lot, he testified that there was no argument between the groups. And while he saw a gun, no one pointed it at him or used it in a threatening manner (5 RR 133-4).

Additionally, the appellant's admission that he intended to fire over the crowd, rather than into the crowd, shows that he did not think it was *immediately* necessary to defend himself from another's use or potential use of deadly force (5 RR 134-5). Rather, he testified that he wanted to "frighten the crowd to keep them

12

from pursuing [him]" (5 RR 135). Because he did not testify that he feared for his life and firing a gun over a crowd of people to frighten them is not evidence of a belief harm was imminent, no rational factfinder could have determined that the appellant's use of deadly force was immediately necessary. Thus, the court of appeals erred in holding that the appellant was entitled to an instruction on self-defense.

## GROUND FOR REVIEW THREE

*The trial court could determine as a matter of law that the victim was an innocent third person under Section 9.05 of the Texas Penal Code thus precluding an instruction on self-defense.*

The lower courts of appeals are split in their treatment of Section 9.05 of the Texas Penal Code and its ability to preclude a self-defense instruction. Section 9.05 limits the justification of self-defense, indicating that a justification is "unavailable" if while using or threatening justified deadly force against another, the defendant recklessly injures or kills an innocent third person. TEX. PENAL CODE § 9.05 (West 2011). Although it is clear that there is no justification corollary to the doctrine of transferred intent, it is unclear how Section 9.05 applies. *See* TEX. PENAL CODE § 6.04 (West 2011).

The statute neither defines "unavailable" nor "innocent third person."[4] *See* TEX. PENAL CODE § 9.05 (West 2011). More importantly, it is unclear who decides whether a victim was an innocent bystander: is it a question of fact to be determined by the jury or a question of law to be determined by the trial judge. *See id*.

Some courts treat Section 9.05 as question of law to be determined by the trial court in its role as a gatekeeper, barring a self-defense instruction. *See Banks v. State*, 955 S.W.2d 116, 119 (Tex.App.—Fort Worth 1997, no pet.) (affirming trial court's decision not to include an instruction on self-defense because appellant killed an innocent third person under Section 9.05); *Vidal v. State*, 418 S.W.3d 907, 911 (Tex.App.—Houston [14th Dist.] 2013, pet. ref'd) (affirming trial court's decision to exclude self-defense instruction because the complainant was an innocent bystander under Section 9.05); *Thomas v. State*, 05-96-01469-CR, 1998 WL 549070, at *4 (Tex.App.—Dallas Aug. 31, 1998, pet. ref'd) (mem. op., not designated for publication) (finding that "the trial court does not err in refusing to submit a jury charge on defense of third persons when it is the third person or some other innocent third party that is injured or killed."); *Brown v. State*, 10-07-00279-CR, 2010 WL 138331, at *2 (Tex.App.—Waco Jan. 13, 2010, pet. ref'd, untimely filed) (mem. op., not designated for publication) (affirming trial court's decision to

---

[4] Section 9.05 is not one of the enumerated circumstances when self-defense is "not justified." *See* TEX. PENAL CODE. § 9.31(b) (West 2011).

14

exclude self-defense instruction because the complainant was an innocent bystander).

Other courts treat Section 9.05 as an additional charge to be submitted to the jury. *See Sparks v. State*, 177 S.W.3d 127, 134 n. 5 (Tex.App.—Houston [1st Dist.] 2005, no pet.) (holding that "[w]hen the evidence raises the issue whether an innocent third person was killed recklessly during a defendant's use of self-defense, the trial court must first charge the jury on the law of [the] appellant's right to self-defense and then further charge the jury on the section 9.05 limitation concerning reckless injury or death of an innocent third person."); *Arias v. State*, 04-04-00247-CR, 2005 WL 1334536, at *5 (Tex.App.—San Antonio June 8, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that a jury instruction on Section 9.05 as a limitation to the appellant's self-defense justification was proper).

The present case shows why guidance on this issue is needed. The court of appeals held that the trial judge could not determine if Section 9.05 applied as a matter of law; that it was a question for the factfinder. *Dugar*, 2015 WL 1632690 at *12. But without evidence that Williams used deadly force, attempted to use deadly force, or complied with another's use of deadly force, the trial court should be able to determine as a matter of law whether he was an innocent bystander.[5] *See*

---

[5] As previously stated, no evidence was presented of Williams' actions (3 RR 105, 158, 181). Moreover, the appellant admitted that he killed Williams by accident (5 RR 158-59).

*Brown*, 2010 WL 138331 at \*1 (holding Section 9.05 applied when there was no evidence in the record that the complainant used or exhibited deadly force during the altercation from a group at a bar which led to the fatal shooting; thus, appellant was not entitled to a self-defense instruction).

Additionally, the lower court contradicts its previous holding in *Vidal*, where it held that Section 9.05 precluded an instruction on self-defense. *Vidal*, 418 S.W.3d at 911. In *Vidal*, the appellant pushed the intended victim's truck into a ditch causing injury to a child passenger. *Vidal*, 418 S.W.3d at 909-10. The lower court distinguishes *Vidal* on the facts stating that there was no dispute the child was an innocent third person. *Dugar*, 2015 WL 1632690 at \*13. But Williams' actions are not different than the child-victim in *Vidal*, they both were merely present.

Moreover, the lower court concludes that even assuming Williams was an innocent bystander the jury should still determine whether the appellant acted recklessly in killing him, thereby determining whether his killing was justified. *Dugar*, 2015 WL 1632690 at \*12. But this conclusion is untenable. If the appellant intentionally killed an innocent third person it would be an unjustifiable homicide. *See* TEX. PENAL CODE § 19.02 (West 2011). And to receive a self-defense instruction for the use of a firearm against another, the defendant cannot claim an accidently firing; he must admit he intentionally fired the weapon. *Shaw*, 243

16

S.W.3d at 658. Therefore, because the lower courts are split on the treatment of Section 9.05 and need guidance, this Court should grant discretionary review.

## GROUND FOR REVIEW FOUR

> *The court of appeals erred in finding that the appellant was harmed by the failure to include a self-defense instruction because evidence sufficiently established beyond a reasonable doubt that there was no justification for protection against deadly force.*

The appellant was not harmed by any potential jury charge error based on the lack of a multiple assailants self-defense instruction. The remainder of the jury charge was correct, and the appellant did not complain about any other charge error on appeal. The state of the evidence was strongly in favor of a conviction. The State's witnesses testified that, though they were upset, no threats were made or weapons drawn (3 RR 55-56, 103, 175). All witnesses were clear that Williams was merely present on the scene at the time and had no altercation with the appellant (3 RR 105, 181; 5 RR 158). And the forensic evidence showed that Williams was killed by a bullet from the appellant's gun (5 RR 30-32, 47).

The appellant testified he felt vulnerable, but the lower court recognized that "[b]ecause [the] appellant gave more than one story of the events, his claim of self-defense may not strike all as especially strong or convincing." *Dugar*, 2015 WL 1632690 at *11. And other evidence supporting the appellant's fear of a group attack was vague testimony that the crowd as a whole was hostile (5 RR 101).

17

Moreover, the appellant testified that he intended to only warn the crowd by shooting "over" it (5 RR 154-57). Therefore, no rational factfinder could determine that the appellant reasonably believed he was in imminent danger. *See Dickey*, 22 S.W.3d at 492-93 (holding there was no harm for exclusion of a multiple assailants instruction because the evidence that the deceased and another were acting in concert was ambiguous at best).

Finally, the lack of an instruction on self-defense did not foreclose all other defenses. *See Dugar*, 2015 WL 1632690 at *16. The appellant still had evidence that he fired over the crowd, which he could claim was not an act clearly dangerous to human life. Therefore, the appellant could not show that he was harmed by any error in the jury charge, and the court of appeals erred in holding to the contrary.

## PRAYER FOR RELIEF

It is respectfully requested that this petition should be granted and that the opinion of the court of appeals should be reversed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ *Katie Davis*

**KATIE M. DAVIS**
Assistant District Attorney

18

Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that: (a) the word count function of the computer program used to prepare this document reports that there are 4,487 words in the relevant sections; and (b) a copy of the foregoing instrument will be emailed through TexFile to:

Marc C. Kratovil
Harris County Public Defender's Office
1201 Franklin, 13th Floor
Houston, TX 77002
Mark.Kratovil@pdo.hctx.net

Lisa McMinn
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
Lisa.McMinn@SPA.texas.gov

/s/ _Katie Davis_____

**KATIE M. DAVIS**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Davis_Katie@dao.hctx.net
State Bar Number: 24070242

Date: May 1, 2015

*Appendix A*

*Dugar v. State,*
*14-14-00245-CR, 2015 WL 1632690*
*(Tex.App.—Houston [14th Dist.] April 9, 2015, pet. filed)*

2015 WL 1632690
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.
Court of Appeals of Texas,
Houston (14th Dist.

Jeremy Deshawn Dugar, Appellant
v.
The State of Texas, Appellee
NO. 14–14–00245–CR | Opinion filed April 9, 2015

**On Appeal from the 263rd District Court, Harris County, Texas, Trial Court Cause No. 1407238**

**Attorneys and Law Firms**

Kathryn Davis, Devon Anderson, Alan Curry, for the State of Texas.

Mark Kratovil, for Jeremy Deshawn Dugar.

Panel consists of Justices Christopher, Donovan, and Wise.

## OPINION

Tracy Christopher, Justice

**\*1** In this appeal from a conviction for murder, the question is whether the trial court reversibly erred when it omitted an instruction on the law of self-defense. The trial court ruled that appellant was not entitled to the instruction because he shot and killed an innocent bystander. We conclude that the trial court's reasoning was erroneous, that the instruction should have been given, and that the omission of the instruction resulted in some harm. We therefore reverse the trial court's judgment and remand for a new trial.

## BACKGROUND

On the evening of May 2, 2010, appellant drove to a farewell party for Edrick "Pop" Cole, who was celebrating one of his last nights of freedom before turning himself in for a period of incarceration. Appellant disapproved of Pop and his lifestyle, but appellant chose to attend the party because he was Pop's brother-in-law.

The party was located in the parking lot of an abandoned K-mart. When appellant arrived, more than a hundred people were in attendance and the crowd was acting disorderly. Police were eventually called to the scene and told the crowd to disperse because they did not have a valid permit.

Pop encouraged everyone to move the party to a nearby park. Appellant's two brothers were at the party and they all agreed to drive to the park in their own separate vehicles. The plan was to follow a black Dodge Charger, in which Pop was believed to be a passenger. As they were leaving the K-mart, some jostling occurred near the exits and several drivers tried to maneuver their vehicles in front of each other. Appellant and one of his brothers happened to cut off a black Cadillac, which then ignited a fit of road rage.

Appellant was chased down on a main thoroughfare by the Cadillac and a red Ford Focus, which had also been at the farewell party. The Cadillac moved into the left-hand lane, adjacent to appellant, and the Focus moved into the shoulder on appellant's right side. Appellant was effectively "sandwiched" between the two vehicles. The situation was made especially tense because appellant was driving a Jeep Wrangler with the top down, and his wife was riding as a passenger. With the Jeep's open cover, appellant could hear that the driver of the Cadillac was yelling at him.

At some point, appellant hit the Focus—unintentionally, he claimed—causing the Focus to spin out of control and collide with a green Ford Explorer. The driver of the Explorer had no prior affiliation with Pop or any of the parties involved with this case.

The driver of the Charger, who thought that he was leading a group of cars, saw that a "big wreck" had happened behind him. Suspecting that some of the affected cars were from his caravan, the driver of the Charger pulled into the empty parking lot of a local employment office. Many cars followed him into the parking lot, including the Cadillac, the Focus, and the Explorer. Appellant and his two brothers drove away, but they circled back after a few minutes, believing that Pop was still in the Charger.

**\*2** When appellant entered the parking lot, he estimated that fifteen or sixteen people were standing outside of their vehicles. Pop was not among the crowd, which by then was quite upset. Appellant described the crowd as

"vicious" and "ferocious." People were arguing, using derogatory words, and generally accusing appellant of having caused the accident.

The accounts vary as to whether appellant and his brothers stayed inside of their vehicles, but it is clear that tensions continued to escalate. Appellant saw that one man in the crowd had a handgun, though he was not pointing it at anyone. Appellant cracked open his door and exhibited a handgun of his own, but he did not point it at anyone either. Another man in the crowd saw appellant's weapon and responded, "Oh, well we got weapons too!"

Sensing hostility, appellant thought that some members of the crowd were preparing to rob him or carjack his brothers for the valuable rims on their vehicles. Appellant also suspected that the arguments over the accident were going nowhere. Believing that he was ultimately faultless with respect to the accident, appellant told his brothers that they should all leave. The three of them then drove away in single file, with appellant at the rear.

As he was exiting the parking lot, appellant turned his head and saw that members of the crowd were pursuing him on foot. Appellant believed that his pursuers intended to cause him harm, so he grabbed his weapon, aimed above the crowd, and fired two or three times, hoping to scare the crowd away. Appellant was quickly met with return fire from a shooter in the crowd, who was later identified as Justin Harris. Appellant kept driving and did not return.

One of appellant's shots hit the complainant, Tevin Williams, who had previously been a passenger in the Cadillac. The bullet entered through the top part of the complainant's chest, traveled through his right lung in a downward direction, and exited through his mid-back. The trajectory was fatal. The medical examiner opined that the complainant may have been bending over at the waist when he was struck.

Appellant learned of the complainant's death shortly after the shooting, but he never reported the incident to authorities or surrendered himself for questioning. Several days later, he was tracked down by police and arrested for murder.

During his custodial interrogation, appellant gave conflicting versions of the events. He initially denied that he owned a gun or had fired at the complainant, but when police raised the question of self-defense, appellant confessed that he had discharged several rounds in the direction of the crowd. Appellant explained that he had

felt threatened at the time of the shooting because members of the crowd were armed.

The State's witnesses testified at trial that the complainant was an aspiring young rapper who was scheduled to perform at Pop's farewell party. Witnesses said that the complainant was not armed at the time of the shooting and had played no part in the arguments after the accident. One witness specifically reported that the complainant had never acted in a threatening manner, and that he had been quiet the entire time.

The defense witnesses included one of appellant's brothers, who claimed that there were several guns in the crowd. The brother also testified that he could see the crowd coming towards him as he was trying to leave. A passenger in the brother's car added to this testimony by saying, "They were all after us when we were out of the parking lot."

**\*3** Appellant testified that he fired the first shots, even though he did not believe that a gun was pointed at him at the time of the shooting. Appellant explained, however, that he felt vulnerable because he and his wife were exposed, and he was in a high state of anxiety. Appellant stated that he only intended to scare the crowd, not kill anybody.

The trial court drafted a charge that originally included a self-defense instruction, but during the charge conference, the State objected that appellant was not entitled to the instruction.[1] The State argued that there was no evidence to support the instruction because appellant did not face an immediate threat from the complainant. The State also argued that there was a statutory bar to self-defense because the complainant was an innocent bystander. The latter argument invoked section 9.05 of the Texas Penal Code, which provides that self-defense is not available in a prosecution for the reckless injury or killing of an innocent third party.

Appellant responded that, under the circumstances, he was allowed to use either deadly force or the threat of deadly force, and that the evidence was therefore sufficient to support a self-defense instruction. Appellant also argued that Section 9.05 did not preclude the giving of the instruction. Appellant explained that the complainant was a member of a larger group, and because that group had intimidated appellant, there was at least a fact question as to whether the complainant was an innocent third party. Appellant also explained that Section 9.05 applied only to cases involving reckless killings, meaning that he would still be justified by acting in self-defense if recklessness were not shown. Appellant

accordingly suggested that recklessness was another fact question for the jury to decide.

The trial court determined that "there's certainly nothing there to indicate that [the complainant] was anything but an innocent bystander." Without commenting on whether appellant had killed the complainant recklessly, the court accepted the State's argument under Section 9.05 and held that appellant was not entitled to a self-defense instruction. The court deleted the instruction from its original draft and submitted a final charge that contained no law regarding a justification defense.

## ANALYSIS

We review a complaint of jury-charge error under a two-step process, considering first whether error exists. *See Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). If error does exist, we then analyze that error for harm under the procedural framework of *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984).

### I. Did the trial court err by omitting a self-defense instruction?

The trial court did not expressly rule on the State's first charge objection that the evidence failed to raise the issue of self-defense. Instead, the court concluded that the complainant was an innocent bystander as a matter of law, and based on that conclusion, the court held that appellant should not receive a self-defense instruction because of Section 9.05.

The State asserts on appeal that the trial court made the correct decision by omitting the instruction from the charge, regardless of which objection it actually sustained. We begin by addressing the State's evidentiary objection, because if self-defense was not raised by the evidence, then our error analysis is over, and there is no need to determine whether Section 9.05 had any preclusive effect on the giving of a self-defense instruction.

### A. The evidence raised the issue of self-defense.

**\*4** The trial court must give a requested instruction on every defensive issue that is raised by the evidence. *See Krajcovic v. State,* 393 S.W.3d 282, 286 (Tex.Crim.App.2013). A defensive issue is raised by the evidence if there is some evidence, regardless of its source, on each element of a defense that, if believed by

the jury, would support a rational inference that the element is true. *See Shaw v. State,* 243 S.W.3d 647, 657–58 (Tex.Crim.App.2007).

When deciding whether a defensive issue has been raised by the evidence, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts that have been proven. *Id.* at 658. The defendant is entitled to an instruction on a defense when there is legally sufficient evidence to raise the defense, regardless of whether the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Id.* Whether the record contains such evidence is a question of law, which means that we do not apply the usual rule of appellate deference to the trial court's ruling. *Id.* "Quite the reverse, we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State,* 207 S.W.3d 779, 782 (Tex.Crim.App.2006).

A person is justified in using deadly force against another when and to the extent that he reasonably believes that deadly force is immediately necessary to protect himself from the other's use or attempted use of unlawful deadly force. *See* Tex. Penal Code § 9.32. The State argues on appeal, as it did at trial, that there is no evidence to support a self-defense instruction because the record shows that appellant did not face an immediate threat from the complainant individually. We do not take such a narrow view of the right to self-defense.

When there is evidence, viewed from the standpoint of the defendant, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the trial court should instruct the jury that the defendant had a right to protect himself against the multiple assailants. *See Frank v. State,* 688 S.W.2d 863, 868 (Tex.Crim.App.1985); *Wilson v. State,* 140 Tex.Crim. 424, 429, 145 S.W.2d 890, 893 (1940). The point is well-demonstrated by the case of *Sanders v. State,* 632 S.W.2d 346 (Tex.Crim.App. [Panel Op.] 1982). There, the defendant was attacked inside a beer joint, and then pursued outside by a group of several men. *Id.* at 346. The defendant obtained a rifle and, from a distance of more than thirty feet, shot towards the group to scare the men away. *Id.* at 347. One of the shots struck the decedent, a man who had not attacked the defendant. *Id.* at 346. The trial court instructed the jury that it could acquit on the grounds of self-defense, but only if the jury found that the defendant reasonably believed that the decedent—and only the decedent—was using or attempting to use unlawful deadly force. *Id.* at 347. The Court of Criminal Appeals held that the charge was too restrictive, and that

the defendant was entitled to a self-defense instruction as it relates to multiple assailants. *Id.* at 348.

In this case, appellant testified that he was being pursued by a group of a men, just like the defendant in *Sanders.* Appellant also testified that the group was "vicious" and "ferocious," and he believed the men were out to cause him harm. If appellant reasonably believed that deadly force was immediately necessary to protect himself from the use or attempted use of unlawful deadly force from the group at large, then the evidence raised the issue of self-defense, regardless of the complainant's individual actions. *SeeFrank,* 688 S.W.2d at 868; *Sanders,* 632 S.W.2d at 348; *see alsoDickey v. State,* 22 S.W.3d 490, 493 (Tex.Crim.App.1999) (Keller, J., concurring) (noting that a person would be entitled to use deadly force in self-defense against another, even if the other was unarmed and made no threatening moves, provided that the other was a party to a hostile group).

**\*5** The State argues next that, even when the actions of the group are examined, the evidence is still insufficient to raise the issue of self-defense. The State emphasizes that there is no evidence that any member of the group verbally threatened appellant with his life. The State also points out that, before the shooting, there was no history of physical abuse between appellant and any member of the group, and no one had actually used or attempted to use deadly force against appellant. The State seems to contend that an actual danger is required before a person may act in self-defense. But again, that view is too narrow.

"A person has the right to defend himself from apparent danger to the same extent as he would if the danger were real." *Hamel v. State,* 916 S.W.2d 491, 493 (Tex.Crim.App.1996). Thus, under certain circumstances, a person may use deadly force against another, even if the other was not actually using or attempting to use unlawful deadly force. *SeeJones v. State,* 544 S.W.2d 139, 142 (Tex.Crim.App.1976); *see alsoBurke v. State,* 652 S.W.2d 788, 790 (Tex.Crim.App.1983) (noting that a person is not required to wait until he is actually attacked before he may lawfully protect himself), *superseded by rule and on other grounds as stated inWhiting v. State,* 797 S.W.2d 45 (Tex.Crim.App.1990). The only requirement is that the person must be justified by acting against the danger "as he reasonably apprehends it." *SeeHamel,* 916 S.W.2d at 493; *see alsoDyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App.1984) (noting that the defendant would be entitled to a self-defense instruction if he reasonably believed that his brother was using or attempting to use unlawful force, and it was "immaterial" that the defendant was not in fact attacked by his brother).

The reasonableness of a person's belief that force is immediately necessary is viewed from the person's standpoint at the time that he acted. *SeeJones,* 544 S.W.2d at 142; *Kolliner v. State,* 516 S.W.2d 671, 674 (Tex.Crim.App.1974). Here, the facts showed that appellant was placed in a hostile situation in the moments before the shooting. Two cars had chased and "sandwiched" him on the road, which was highly aggressive behavior. During the chase, appellant heard that the driver of one of the cars was yelling at him, and the aggressive driving contributed to an accident involving multiple vehicles.

After the accident, the arguments escalated in a parking lot. Many people exited their cars, and according to appellant, they were "vicious," "ferocious," and blaming him for the accident. The testimony supported a finding that the crowd was akin to an angry mob. Appellant saw that at least one person in the crowd had a gun, and he heard a statement that more weapons were present.

Appellant decided to leave the parking lot, without regard to the crowd's belief that he was responsible for the accident. As he drove away, appellant saw that members of the crowd were pursuing him on foot. Even though he did not specifically see a gun pointed at him, appellant could have reasonably believed that the crowd was pursuing him for a sinister purpose: to shoot him while he was exposed and still within range.

Because appellant gave more than one story of the events, his claim of self-defense may not strike all as especially strong or convincing. However, a defense can be raised even when its supporting evidence has been impeached or contradicted. *SeeSmith v. State,* 676 S.W.2d 584, 586–87 (Tex.Crim.App.1984).

Appellant testified that, in the heat of the moment, he was afraid of being harmed. The fact that a shooter in the crowd was able to quickly return fire suggests that a gun may have been at the ready, which lends some credibility to the belief that harm was imminent. We conclude that it was reasonable for appellant to apprehend an immediate danger under the circumstances, and that the evidence was therefore sufficient to raise the issue of self-defense. *SeeSanders,* 632 S.W.2d at 348.

**B. Section 9.05 did not preclude a self-defense instruction.**

**\*6** We now consider what effect, if any, that Section 9.05 has on the giving of a self-defense instruction. The statute provides as follows:

Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person.

Tex. Penal Code § 9.05.

The State argued that appellant could not receive a self-defense instruction because of Section 9.05, and the trial court agreed, having concluded as a matter of law that the complainant was an innocent bystander. The trial court's conclusion was erroneous for at least two reasons.

First, as appellant argued at trial, there was at least a fact question as to whether the complainant was an innocent bystander. The evidence showed that the complainant was a passenger in the same Cadillac that had aggressively chased appellant down the road. After the accident, the complainant exited the Cadillac and joined the larger crowd that appellant described as "vicious" and "ferocious." The State's witnesses testified that the complainant was quiet and never made any threats, but the defense witnesses testified that the crowd as a whole was hostile. One defense witness specifically testified that the entire crowd was in pursuit of appellant as he was leaving the parking lot: "They were *all* after us." Thus, there was a conflict in the evidence. The jury could have found that the complainant was pursuing appellant on foot, or that he was at least a party to an attempted attack.[2]

Second, even if we assumed that the complainant was an innocent third person, his bystander status alone would not preclude the giving of a self-defense instruction. Section 9.05 states that a justification defense is unavailable when the actor "recklessly" injures or kills an innocent third person. Whether a person acts recklessly is a determination that can be made only by the finder of fact, which in this case was the jury. *See Brown v. State,* 122 S.W.3d 794, 800 (Tex.Crim.App.2003) ("[I]n homicide prosecutions, the defendant's state of mind is a question of fact that must be determined by the jury."). It necessarily follows that the trial court could not make a preliminary determination that appellant shot the complainant recklessly, and was therefore ineligible to claim self-defense.

The State contends that we must follow the decisions in

*Banks v. State,* 955 S.W.2d 116 (Tex.App.–Fort Worth 1997, no pet.) and *Vidal v. State,* 418 S.W.3d 907 (Tex.App.–Houston [14th Dist.] 2013, pet. ref'd). In both cases, Section 9.05 was cited as authority for denying an instruction on a justification defense. *See Banks,* 955 S.W.2d at 118; *Vidal,* 418 S.W.3d at 911.

**\*7** *Banks* is not binding on this court, and *Vidal* is distinguishable on the facts. In *Vidal,* the defendant was charged with reckless injury to a child, and there was no dispute that the child was an innocent third person. *See Vidal,* 418 S.W.3d at 911. In this case, there was at least a fact question regarding the complainant's bystander status, and appellant was charged with more than just reckless conduct. The jury was asked to decide whether appellant acted intentionally, knowingly, or recklessly. Moreover, the Court of Criminal Appeals has held that the jury may be instructed on the law of self-defense, even when the defendant is charged with a crime in which the culpable mental state is recklessness. *See Alonzo v. State,* 353 S.W.3d 778, 782 (Tex.Crim.App.2011).

During the charge conference, appellant requested an instruction on self-defense that included a statement under Section 9.05 that the jury should convict him if he recklessly used deadly force against the complainant.[3] We conclude that appellant was entitled to the instruction, and that the trial court erred by refusing to give it.

## II. Did the trial court's error result in some harm?

Not all jury-charge errors require reversal. *See Reeves v. State,* 420 S.W.3d 812, 816 (Tex.Crim.App.2013). If the defendant did not object to the erroneous charge, he must show that the error was "fundamental" and that he suffered "egregious harm" before the judgment may be reversed. *Id.* Conversely, if the defendant did object at trial, as appellant did here, then he will obtain relief if the record shows that he suffered "some harm." *Id.*

When applying the "some harm" standard, a reviewing court must determine whether the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Id.* We consider several factors: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) any other information that is relevant and contained within the record. *Id.*

As stated above, the charge did not instruct the jury on any justification defenses. The jury was asked to determine only whether appellant was guilty of felony murder. The charge gave two alternative theories on which the jury could convict, and the theories stated as

follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 2nd day of May, 2010, in Harris County, Texas, the defendant, Jeremy Deshawn Dugar, did then and there unlawfully, commit the felony offense of aggravated assault by intentionally, knowingly or recklessly causing serious bodily injury to Tevin Williams by firing a firearm into the vicinity of a group of people, and while in the course of and furtherance of the commission of said offense did commit an act clearly dangerous to human life, to-wit: firing a deadly weapon, namely a firearm, into the vicinity of a group of people and did thereby cause the death of Tevin Williams; or
>
> If you find from the evidence beyond a reasonable doubt that on or about the 2nd day of May, 2010, in Harris County, Texas, the defendant, Jeremy Deshawn Dugar, did then and there unlawfully, commit the felony offense of deadly conduct by intentionally, knowingly, or recklessly discharging a firearm at or in the direction of Tevin Williams, and while in the course of and furtherance of the commission of said offense, did commit an act clearly dangerous to human life, to-wit: by firing a deadly weapon, namely a firearm, into the vicinity of a group of people and did thereby cause the death of Tevin Williams, then you will find the defendant guilty of felony murder, as charged in the indictment.

**\*8** The evidence left little doubt that appellant committed the *actus reus*. The bullet that struck the complainant was consistent with a bullet from appellant's firearm. And, of course, appellant admitted that he discharged his weapon in the direction of the group of people where the complainant was ultimately shot.

Appellant freely gave his testimony in anticipation that he would receive a self-defense instruction. His entire defense was built around that theory, which he made aware to the jury before any witnesses had taken the stand. During voir dire, defense counsel questioned the venire panel about self-defense, and even elicited stories from the panel about how some had been involved in bar fights or other personal attacks. And during opening statements, defense counsel clearly signaled that self-defense was the ultimate issue in the case. Counsel began her opening statement as follows: "Good morning, ladies and gentlemen. Jeremy Dugar is not guilty of murder. He did not know the decedent in this case. What took place is a tragic accident that was in the course of justified self-defense."

After the charge conference, the State was first to present

its closing arguments, and the first legal issue that the prosecutor addressed was the omission of a self-defense instruction. The prosecutor told the jury:

> You are not going to see self-defense in this jury charge. You didn't just hear the Judge read it and there is a reason for that. Because it is not appropriate. Because Tevin Williams was an innocent bystander. Because his presence there didn't create the excuse for unlawful [sic] deadly force. Because the defendant was not entitled to self-defense against Tevin Williams.

Defense counsel was left to argue in her closing statements that appellant did not act with the requisite *mens rea.* Counsel argued, for instance, that appellant did not intend to shoot the complainant; rather, appellant intended only to scare the group, and he was not aware that his bullets would strike anyone in particular. These arguments provided no answer to the portion of the charge that asked the more general question of whether appellant intentionally or knowingly "discharg[ed] a firearm at or in the direction of" the complainant, a fact which was conclusively established by appellant's own testimony. The only answer that appellant could have provided to that portion of the charge was a justification defense, but in this case, none was allowed.[4]

The Court of Criminal Appeals has recognized that the erroneous omission of a confession-and-avoidance defense, such as self-defense, "is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *See Cornet v. State,* 417 S.W.3d 446, 451 (Tex.Crim.App.2013). That appears to have been what happened here. Appellant pitched this case as a question of self-defense, and he admitted to the conduct that formed the basis of the offense in order to receive a self-defense instruction. When that instruction was taken away from the jury, appellant was left without his only defensive theory, making his conviction a virtual inevitability.

**\*9** We cannot know for certain whether the jury would have accepted appellant's claim of self-defense had that issue been submitted. As we indicated above, appellant initially denied to police that he was involved in the shooting, which casts doubt on his defensive theory. Nevertheless, appellant testified to facts that, if believed, raised the issue of self-defense, and it is not for this court

to decide whether that claim was credible.

The evidence shows an unfortunate sequence of events in which there seems to have been some level of aggression directed towards appellant. The jury appeared to sympathize with him. During the punishment stage, appellant requested a five-year sentence, the minimum for a felony in the first degree. The State sought no less than thirty years. The jury sentenced appellant to only twelve years, which suggests a belief that he was not significantly blameworthy. *Cf.State v. Warden,* No. PD–1502–10, 2011 WL 1157562, at *1 (Tex.Crim.App. Feb. 9, 2011, not designated for publication) (Keller, P.J., dissenting from the refusal of a petition for discretionary for review) (opining that the erroneous omission of a self-defense instruction was probably harmless because the jury assessed punishment at sixty-five years' imprisonment, indicating a belief that the defendant was significantly blameworthy).

To summarize, appellant had only a single defense, and it was a justification defense that required him to first prove the facts that comprised the charged offense. When the trial court denied an instruction on appellant's sole defensive theory, the jury was given a charge that contained no vehicle with which it could acquit. The

evidence showed that appellant was entitled to an instruction on self-defense, and there is at least some indication that the jury found that appellant was not significantly blameworthy. Having considered all of the pertinent factors, we conclude that the trial court's error resulted in some harm, not merely theoretical harm. *SeeCarmen v. State,* 276 S.W.3d 538, 546–47 (Tex.App.–Houston [1st Dist.] 2008, pet. ref'd) (concluding that the erroneous omission of a self-defense instruction resulted in some harm); *Johnson v. State,* 271 S.W.3d 359, 368–69 (Tex.App.–Beaumont 2008, pet. ref'd) (same); *Guilbeau v. State,* 193 S.W.3d 156, 161 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd) (same); *VanBrackle v. State,* 179 S.W.3d 708, 716–17 (Tex.App.–Austin 2005, no pet.)(same).

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for a new trial.

Footnotes

[1]    The original draft of the trial court's charge is not in our record, but we can deduce that it contained a self-defense instruction because appellant submitted a written request during the charge conference to "edit" the court's instruction on self-defense.

[2]    The State points out that the complainant was found without a weapon on his person and that his hands tested negative for the presence of gunshot residue. But the defense witnesses testified that there were multiple guns in the crowd. Furthermore, one police detective testified that he was never able to locate the Focus or its occupants, which raises the suggestion that the crime scene had not been preserved by the time police arrived.

[3]    The requested instruction provided as follows: "Furthermore, if you find that in using or threatening to use force or deadly force in self defense or defense of a third person, Jeremy Desha[w]n Dugar recklessly injured or killed an innocent third person, then you should find against the defendant on the issue of self defense and on the issue of defense of a third person."

[4]    Defense counsel also responded to the charge of recklessness, but the argument essentially consisted of just a definition of that mental state. Counsel quickly shifted her discussion to omissions in the State's case, like the absence of scene diagrams and videos.

   © 2015 Thomson Reuters. No claim to original U.S. Government Works.